IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

1. $68,145.34 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599362910;
2. $1,285,623.35 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599517901;
3. $10,008.31 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599965977;
4. $10,008.30 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599965928;
5. $210,064.42 HELD IN JP MORGAN CHASE BANK ACCOUNT #635479809;
6. $45,144.07 HELD IN JACKSON NATIONAL LIFE INSURANCE ACCOUNT #1020952900;
7. $45,279.02 HELD IN JACKSON NATIONAL LIFE INSURANCE ACCOUNT #1020964665;
8. $42,351.34 HELD IN AMERICAN FUNDS BANK ACCOUNT #4000751438;
9. $55,889.35 HELD IN LEGG MASON BANK ACCOUNT #5000135287;
10. $55,715.15 HELD IN LEGG MASON BANK ACCOUNT #5000135286;
11. $45,387.81 HELD IN ALLIANZ BANK ACCOUNT #AV001069790;
12. $45,602.18 HELD IN ALLIANZ BANK ACCOUNT #AV001072172;
13. $2,110.72 HELD IN ACADEMY BANK ACCOUNT #9200701088;
14. $2,467.83 HELD IN ACADEMY BANK ACCOUNT #9300587245;
15. 2011 TOYOTA SIENNA XLE, VIN 5TDYK3DC2BS037859;
16. $263,262.00 SEIZED FROM JP MORGAN CHASE BANK ACCOUNT #936007280 ON JUNE 25, 2018;
17. $88,737.41 HELD IN JACKSON NATIONAL LIFE IRA ACCOUNT #1020955836;
18. ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #936007280;
19. ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #3636820079;
20. ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #591953596;
21. ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #634799504;
22. REAL PROPERTY LOCATED AT 5877 S. DUQUESNE COURT, AURORA, COLORADO;
23. ALL FUNDS HELD IN BETTERMENT WEALTH BUILDER ACCOUNT #268011226640922;
24. $25,714.83 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #598869741;
25. $347.59 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #587239989;
26. $1,513,635.01 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #59985444;
27. $25,934.80 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #588743187;
28. 2018 HONDA CR-V, VIN 7FARW2H91JE026845;

29.   $573,887.35 HELD IN JP MORGAN CHASE BANK ACCOUNT #281852795;

30.   $331,298.08 HELD IN JP MORGAN CHASE BANK ACCOUNT #3663323286;

31.   2015 CADILLAC XTS, VIN 2G61L5S37F9244682;

32.   2003 CHEVROLET CORVETTE, VIN 1G1YY32G435115773;

33.   $206,575.57 HELD IN BANK OF AMERICA ACCOUNT #334055019012;

34.   $1,491,204.76 HELD IN BANK OF AMERICA ACCOUNT #224056082506;

35.   $69,539.19 HELD IN BANK OF AMERICA ACCOUNT #334055767354;

36.   ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334056613532;

37.   ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334047935713;

38.   ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334047935705;

39.   $49,606.76 HELD IN BETTERMENT BANK ACCOUNT #268011234824534;

40.   REAL PROPERTY LOCATED AT 445 KENDRICK TERRACE SW, ATLANTA, GEORGIA;

41.   $919.18 HELD IN BANK OF AMERICA ACCOUNT #898086427686;

42.   REAL PROPERTY LOCATED AT 7207 DEMETER DRIVE, ATLANTA, GEORGIA;

43.   2016 NISSAN ROGUE, VIN 5N1AT2MV9GC737702;

44.   2017 BMW 330i, VIN WBA8B9G36HNU56551;

45.   2014 FORD F150, VIN 1FTFW1CF7EKD13069;

46.   $7,770.76 HELD IN REGIONS BANK ACCOUNT #0246222464;

47.   $116,259.31 HELD IN BANK OF AMERICA ACCOUNT #334056385560;

48.   $99,853.91 HELD IN BANK OF AMERICA ACCOUNT #334056385727;

49.   $33,446.88 HELD IN BANK OF AMERICA ACCOUNT #334056385644;

50.   $695,774.00 HELD IN REGIONS BANK ACCOUNT #250240609;

51.   REAL PROPERTY LOCATED AT 4236 PEPPERDINE DRIVE, DECATUR, GEORGIA;

52.   2007 TRANSCRAFT CORP FLATBED TRAILER 53X102, VIN 1TTE4820871082302;

53.   $259.51 HELD IN PUBLIC SERVICE CREDIT UNION BANK ACCOUNT #9100701809;

54.   $2,293.61 HELD IN PUBLIC SERVICE CREDIT UNION BANK ACCOUNT #9000701809;

55.   $123,563.08 HELD IN GUARANTY BANK ACCOUNT #4000825684;

56.   $189,862.19 HELD IN GUARANTY BANK ACCOUNT #4000824577;

57.   $99,931.11 HELD IN GUARANTY BANK ACCOUNT #4000825668;

58.   $6,392.44 HELD IN BETTERMENT BANK ACCOUNT #268011234296345; AND

59.   $4,627.11 HELD IN USAA BANK ACCOUNT #202360792;

      Defendants.

---

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

---

The United States of America, by and through United States Attorney Jason R. Dunn and Assistant United States Attorney Tonya S. Andrews, pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), states:

## JURISDICTION AND VENUE

1.     The United States of America ("the "United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §§ 981(a)(1)(A) and (C), 18 U.S.C. §§ 984 and 985 seeking forfeiture of defendant properties based upon violations of 18 U.S.C. §§ 201, 201, 208, 666, 1343, 1956, 1957 and 1347, and 42 U.S.C. § 1320a-7b(b).

2.     Venue is proper under 28 U.S.C. § 1355(b), as the defendant assets may be brought in any district where any of the underlying acts were or omissions occurred upon which the forfeiture based, assets were seized in the District of Colorado, Middle District of Florida, Southern District of Georgia, Northern District of Georgia, Middle District of Georgia, Central District of California, Eastern District of New York, District of Minnesota and Southern District of New York.

## DEFENDANT PROPERTIES

3.     Defendant property is more fully described as:

a.     $68,145.34 seized from Bellco Credit Union Bank Account #599362910, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in the name of Advantage Home Health Agency LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

b.     $1,285,623.35 seized from Bellco Credit Union Bank Account #599517901, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in

the name of Advantage Home Health Agency LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

c.     $10,008.31 seized from Bellco Credit Union Bank Account #599965977, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, in the name of Elijah Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

d.     $10,008.30 seized from Bellco Credit Union Bank Account #599965928, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, in the name of Elisha Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

e.     $210,064.42 seized from Chase Bank Account #635479809, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, in the name of Joseph Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

f.     $45,144.07 seized from Jackson National Life Insurance Account #1020952900, located at 7601 Technology Way, 5th Floor, Denver, Colorado, in the name of Joseph Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

g.     $45,279.02 seized from Jackson National Life Insurance Account #1020964665, located at 7601 Technology Way, 5th Floor, Denver, Colorado, held in the name of Flavia Nalunga, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

h.    $42,351.34 seized from in American Funds Bank Account #4000751438, located at 6455 Irvine Center Dr., Irvine, California, in the name of Flavia Nalunga, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

i.    $55,889.35 seized from Legg Mason Bank Account #5000135287, located at 620 Eighth Avenue, 49th Floor, New York, New York, held in the name of Joseph C. Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

j.    $55,715.15 seized from Legg Mason Bank Account #5000135286, located at 620 Eighth Avenue, 49th Floor, New York, New York, held in the name of Joseph C. Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

k.    $45,387.81 seized from Allianz Bank Account #AV001069790, located at P.O. Box 561, Minneapolis, Minnesota, in the name of Joseph Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

l.    $45,602.18 seized from Allianz Bank Account #AV001072172, located at P.O. Box 561, Minneapolis, Minnesota, in the name of Flavia Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

m.    $2,110.72 seized from Academy Bank Account #9200701088, located at 10900 E. Briarwood Ave., Englewood, Colorado, held in the name of Crosswalk

Consulting LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

n.      $2,467.83 seized from Academy Bank Account #9300587245, located at 10900 E. Briarwood Ave., Englewood, Colorado, held in the name of Crosswalk Consulting LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

o.      2011 Toyota Sienna XLE, VIN 5TDYK3DC2BS037859, (defendant "Toyota Siena") was purchased on March 11, 2016 in the name of Joseph Prince and is encumbered with Exeter Finance.

p.      $263,262.00 seized from JP Morgan Chase Bank Account #936007280, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Crosswalk Consulting, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

q.      $88,737.41 seized from Jackson National Life IRA Account #1020955836, located at 7601 Technology Way, 5th Floor, Denver, Colorado, held in the name of Joseph Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

r.      All funds held in JP Morgan Chase Bank Account #936007280, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Crosswalk Consulting, currently in the custody of JP Morgan Chase Bank.

s.      All funds held in JP Morgan Chase Bank Account #3636820079, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Crosswalk Consulting, currently in the custody of JP Morgan Chase Bank.

t.      All funds held in JP Morgan Chase Bank Account #591953596, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Joseph and Flavia Prince, currently in the custody of JP Morgan Chase Bank.

u.      All funds held in JP Morgan Chase Bank Account #634799504, located at 4968 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Joseph and Flavia Prince, currently in the custody of JP Morgan Chase Bank.

v.      Real Property Located at 5877 S. Duquesne Court, Aurora, Colorado, which is more fully described as follows:

Lot 18 Blk 4 Sorrel Ranch Sub 6th Flg

Defendant 5877 S. Duquesne Court, Aurora, Colorado is title to Joseph Prince and Flavia Nalunga and is believed to be encumbered by Pacific Union Financial, LLC.

w.      All funds held in Betterment Wealth Builder Account #268011226640922, held in the name of Joseph C. Prince, currently in the custody of Betterment Wealth Builder Account.

x.      $25,714.83 seized from Bellco Credit Union Bank Account #598869741, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in the name of Genesis Home Health Agency, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

y.      $347.59 seized from Bellco Credit Union Bank Account #587239989, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in the name of Genesis Home Health Agency, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

z. $1,513,635.01 seized from Bellco Credit Union Bank Account #59985444, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in the name of Andrew Ssekajja, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

aa. $25,934.80 seized from Bellco Credit Union Bank Account #588743187, located at 7600 East Orchard Road, Suite 400N, Greenwood Village, Colorado, held in the name of Andrew Ssekajja, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

bb. 2018 Honda CR-V, VIN 7FARW2H91JE026845, (defendant "Honda CR-V") seized on June 22, 2018 from Andrew Ssekajja located at 201 Bon Air Drive, Augusta, Georgia.  Upon information and belief, defendant Honda CR-V is registered in the name of Andrew Ssekajja, and is unencumbered.  Defendant Honda CR-V is currently being held by the United States Marshals Service, Vintage Autoworks, Inc., 1718 Hwy 138 NE, Conyers, Georgia 30013.

cc. $573,887.35 seized from Chase Bank Account #281852795, located at 6160 E. Colfax Ave, Denver, Colorado, held in the name of Legacy Home Health Care LLC, currently in the custody of United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

dd. $331,298.08 seized from Chase Bank Account #3663323286, located at 6160 E. Colfax Ave., Denver, Colorado, held in the name of Legacy Home Health Care, currently in the custody of United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ee.     2015 Cadillac XTS, VIN 2G61L5S37F9244682, (defendant "Cadillac XTS") seized on June 22, 2018 from Roland Vaughn located at 1340 Gulf Boulevard, Apt 3D, Clearwater Beach, Florida.   Upon information and belief, defendant Cadillac XTS is registered in the name of Roland Vaughn, and is unencumbered.   Defendant Cadillac XTS is currently being held by United States Marshals Service, Orlando, Florida.

ff.     2003 Chevrolet Corvettte, VIN 1G1YY32G435115773, (defendant "Chevrolet Corvette") seized on June 22, 2018 from Roland Vaughn located at 1340 Gulf Boulevard, Apt 3D, Clearwater Beach, Florida.   Upon information and belief, defendant Chevrolet Corvette is registered in the name of Defendant Roland Vaughn, and is unencumbered.   Defendant Chevrolet Corvette is currently being held by the United States Marshals Service, Orlando, Florida.

gg.     $206,575.57 seized from Bank of America Account #334055019012, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems, LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

hh.     $1,491,204.76 held in Bank of America Account #224056082506, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ii.     $69,539.19 held in Bank of America Account #334055767354, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

jj.     All funds held in Regional Home Healthcare East, LLC Bank of America Account #334056613532, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems LLC, currently in the custody of Bank of America.

kk.    All funds held in Regional Home Healthcare East, LLC Bank of America Account #334047935713, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems LLC, currently in the custody of Bank of America.

ll.     All funds held in Regional Home Healthcare East, LLC Bank of America Account #334047935705, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Regional Home Health Care Systems LLC, currently in the custody of Bank of America.

mm.   $49,606.76 seized from Betterment Bank Account #268011234824534, located at 61 W. 23rd Street, 4th Floor, New York, New York, held in the name of Marcelline McCrea, currently in the custody of United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

nn.    Real Property Located at 445 Kendrick Terrace SW, Atlanta, GA  30331 (defendant 445 Kendrick Terrace SW), which is more fully described as follows:

Parcel ID 14F0075 LL0618, Fulton County, State of Georgia.

Defendant 445 Kendrick Terrace SW was purchased on April 20, 2018 in the name of Venture Homes Inc.

oo.    $919.18 seized from Bank of America Account #898086427686, located at 5117 S. Yosemite Street, Greenwood Village, Colorado, held in the name of Khandice

McCrea, currently in the custody of United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

pp.    Real Property Located at 7207 Demeter Drive, Atlanta, GA 30349 (defendant 7207 Demeter Drive), which is more fully described as follows:

Parcel ID 14F0155 LL0660, Fulton County, State of Georgia.

Defendant 7207 Demeter Drive was purchased on November 9, 2017 in the name of Khandice (McCrea) Smith.

qq.    2016 Nissan Rogue, VIN 5N1AT2MV9GC737702, (defendant "Nissan Rogue") seized on June 28, 2018 from Susan Stripling located at 4702 Skull Shoals Road, Washington, Georgia.  Upon information and belief, defendant Nissan Rogue is registered in the name of Susan Stripling, and is unencumbered. (or is encumbered with XX Bank of Colorado.)   Defendant Nissan Rogue is currently being held by the United States Marshals Service, Vintage Autoworks, Inc., 1718 Hwy 138 NE, Conyers, Georgia 30013.

rr.    2017 BMW 330i, VIN WBA8B9G36HNU56551, (defendant "BMW 330i") seized on June 25, 2018 from Marcelline Stripling located at 445 Kendrick Terrace SW, Atlanta, Georgia.  Upon information and belief, defendant BMW 330i is registered in the name of Marcelline Stripling, and is unencumbered.  Defendant BMW 330i is currently being held by the United States Marshals Service, Vintage Automworks, Inc., 1718 Hwy 138 NE, Conyers, Georgia 30013.

ss.    2014 Ford F150, VIN 1FTFW1CF7EKD13069, (defendant "Ford F150") seized on June 25, 2018 from Marcelline Stripling located at 445 Kendrick Terrace SW, Atlanta, Georgia.  Upon information and belief, defendant Ford F150 is registered in the name of Marcelline Stripling, and is unencumbered.  Defendant Ford F150 is currently

being held by the United States Marshals Service, Vintage Autoworks, Inc., 1718 Hwy 138 NE, Conyers, Georgia 30013.

tt.     $7,770.76 seized from Regions Bank Account #0246222464, located at 1180 W. Peachtree Street, Suite 1225, Atlanta, Georgia, held in the name of Ronnie Stripling, currently in the custody of United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

uu.     $116,259.31 seized from Bank of America Account #334056385560, located at 1801 16th Street, Denver, Colorado, held in the name of Regional Home Healthcare Systems North LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

vv.     $99,853.91 seized from Bank of America Account #334056385727, located at  1801 16th Street, Denver, Colorado, held in the name of Regional Home Healthcare Systems North LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ww.     $33,446.88 seized from Bank of America Account #334056385644, located at 1801 16th Street, Denver, Colorado, held in the name of Regional Home Heathcare Systems North LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

xx.     $695,774.00 seized from Regions Bank Account #250240609, located at 1180 W. Peachtree Street, Suite 1225, Atlanta, Georgia, held in the name of RAMS & Associates LLC, currently in the custody of United States Marshal Service, Denver Colorado, in the seized asset deposit fund account.

yy.    Real Property Located at 4236 Pepperdine Drive, Decatur, GA 30034 (defendant 4236 Pepperdine Drive), which is more fully described as follows:

Parcel ID 15 062 02 056, Pin Number 0064394, DeKalb County, State of Georgia.

Defendant 4236 Pepperdine Drive was purchased on May 4, 2018 and is titled in the name of Inter Coastal Land Acquisition and Development LLC. (CO LLC owned by Joseph Prince, Peter Prince and Marcelline Stripling).

zz.    2007 Transcraft Corp Flatbed Trailer 53X102, VIN 1TTE4820871082302, (defendant "Transcraft Corp Flatbed Trailer") was purchased on June 11, 2018 in the name of Ronnie Stripling.

aaa.    $259.51 seized from Public Service Credit Union Bank Account #9100701809, located at 6850 S. Yosemite St., Centennial, Colorado, held in the name of Gracewood Home Health Agency LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

bbb.    $2,293.61 seized from Public Service Credit Union Bank Account #9000701809, located at 6850 S. Yosemite St., Centennial, Colorado, held in the name of Gracewood Home Health Agency LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ccc.    $123,563.08 seized from Guaranty Bank Account #40000825684, located at 6501 E. Belleview Ave., Englewood, Colorado, held in the name of Gracewood Home Health Agency, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ddd.    $189,862.19 seized from Guaranty Bank Account #4000824577, located at 6501 E. Belleview Ave., Englewood, Colorado, held in the name of Gracewood Home

Health Agency LLC, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

eee.   $99,931.11 seized from Guaranty Bank Account #4000825668, located at 6501 E. Belleview Avenue, Englewood, Colorado, held in the name of Catherine A. Beach and Glenn W. Beach, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

fff.   $6,392.44 seized from Betterment Bank Account #268011234296345, located at 61 West 23rd Street, 4th Floor, New York, New York, held in the name of Glenn Beach, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

ggg.   $4,627.11 seized from USAA Bank Account #202360792, located at 1855 Telestar Drive, Colorado Springs, Colorado, in the name of Peter A. Prince, currently in the custody of the United States Marshal Service, Denver, Colorado, in the seized asset deposit fund account.

## OVERVIEW OF THE SCHEME

4.     Joseph C. Prince was employed by the Department of Veterans Affairs (VA) in the Office of Community Care in Denver as a Beneficiary/Provider Relations Specialist for the VA's Spina Bifida (SB) Health Care Benefits Program.

5.     Prince had been employed by the VA since 1995. Prince received numerous promotions throughout his career with the VA, but in October 2014, Prince was downgraded from a GS-11 step 8 to a GS-9 step 10 for failure to complete a performance improvement plan. In or around October 2016, Prince moved into his

current role. Prior to being employed by the VA, Prince served in the U.S. Army from 1979 through 1994.

6.      The VA's Spina Bifida Health Care Benefits Program provides benefits to certain Korea and Vietnam Veterans' birth children, who had been diagnosed with spina bifida.  This program pays for beneficiaries' health care, including unskilled home health aide services and homemaking services, as discussed further below.  The VA's SB Health Care Benefits Program is a federal health care program under 18 U.S.C. § 24(b).

7.      As a Beneficiary/Provider Relations Specialist, Prince was responsible for maintaining expertise in the benefits program, acting on behalf of beneficiaries and health care providers on questions and issues requiring problem resolution, and coordinating with health care providers to ensure effective claim processing, among numerous other duties.

8.      Beginning in or around June 2017, Prince used his position with the VA to solicit beneficiaries to sign on to receive home health benefits and then structured the home health and homemaking services program to financially benefit himself in three ways: (1) by referring beneficiaries to a home health agency owned by his family members and other associates, (2) by soliciting and receiving bribes or rewards and kickbacks from home health agencies owned or controlled by his associates and to which he referred beneficiaries; and (3) by causing and facilitating overbilling by the home health agencies.

## II.  Background and Regulations Regarding the Department of Veterans Affairs Spina Bifida Health Care Benefits Program

9.     The Department of Veterans Affairs (VA) provides monetary allowances, vocational training and rehabilitation and VA- financed health care benefits to certain Korea and Vietnam Veterans' birth children, who have been diagnosed with Spina Bifida (SB). *See* 38 C.F.R. §17.901.

10.     The Veterans Health Administration Office of Community Care in Denver, Colorado, manages the VA's SB Health Care Benefits Program, including authorization of benefits and the subsequent processing and payment of health care claims after a determination of eligibility has been made by the Denver, Colorado, VA Regional Office. For covered benefits, the VA is the exclusive payer for covered services, regardless of any third party insurer, Medicare, Medicaid, health plan, or any other plan or program providing health care coverage. 38 C.F.R. §17.901 (note).

11.     The Health Care Benefits Program pays for "home care", which is defined to include the following health-related services:

a. "Home health aide services," are defined as "providing personal care and related support services to an individual in the home or other place of residence." 38 C.F.R. § 17.900. These services "may include assistance with Activities of Daily Living such as: Bathing; toileting; eating; dressing; aid in ambulating or transfers; active and passive exercises; assistance with medical equipment; and routine health monitoring.." *Id.* Home health aide services must be provided according to the individual's written plan of care and must be prescribed by an approved health care provider. *Id.* This is documented on a Form CMS-485 ("Home Health Certification and Plan of Care").

b. Homemaker services "include assistance with personal care; home management; completion of simple household tasks; nutrition, including menu planning and meal preparation; consumer education; and hygiene education." Such services "may include assistance with Instrumental Activities of Daily Living, such as:  Light housekeeping; laundering; meal preparation; necessary services to maintain a safe and sanitary environment in the areas of the home used by the individual; and services essential to the comfort and cleanliness of the individual and ensuring individual safety." *Id.* The law requires that homemaker services must be provided according to the individual's written plan of care and must be prescribed by an approved health care provider. *Id.* Coverage for homemaker services requires preauthorization. *Id.* §17.902. This means coverage will be provided only where it is demonstrated that the care is medically necessary.  Preauthorization requests must be made to the Health Administration Center and include the type of service requested, the medical justification, the estimated cost, and the name, address, and phone number of the provider.

12.     Specifically excluded from these types of service are incidental services such as shopping, companion services, and personal attendant services that are not health-related.  *See* Spina Bifida Health Care Benefits Program Policy Manual 2.09 ("Home Care").

13.     Health care paid for by the VA's SB Health Care Benefits Program can be provided by the VA directly, by contract with an approved health care provider, or by "other arrangement with an approved health care provider." *Id.* § 17.901(c).  An

"approved health care provider" is defined as a health care provider that is approved by one of a few specified agencies or that is approved for providing health care under a license or certificate issued by a governmental entity with jurisdiction. *Id.* § 17.900.

14.    To be paid by the VA, an entity must be entered into the VA system as a vendor.  This requires the company to submit a standard form 3881 along with an IRS form W-9 to the VA.  One key piece of information required to become a vendor is a National Provider Identifier (NPI). Once entered as a vendor, the provider is able to receive payments.

15.    Payment for services rendered by a provider will be issued when claims are submitted to the Health Administration Center with all required information, to include dates of services and all procedures performed. *Id.*§17.903. A provider can submit claims for services up to one year after the date of service, but in case of "retroactive approval for health care, 180 days following beneficiary notification of eligibility." *Id.*§17.903(a)(3). The payment schedule is set by the VA.  *See* Spina Bifida Health Care Benefits Program Policy Manual, Chapter 3.

16.    VA policy addresses provision of home health services by a family member of the covered beneficiary in just one circumstance, bowel and bladder care. Such care is often required by individuals with SB, and the VA policy provides that such care may either be provided by a registered health care provider or a "family member who has been trained and certified by a licensed health care provider."  SB Policy Manual, Chapter 2 and 9.1 (Bowel and Bladder Care).  Bowel and bladder services provided by a family member are covered up to four hours each day "when appropriate and supported by medical documentation." Family members who have been approved

to provide this care submit their claims directly to the VA for payment and are paid approximately $15.50 per hour.  See SB Policy Manual, Chapter 3 (referring to hourly rate paid to nursing assistants in accordance with VA Federal Service General Schedule, Grade 5, Step 5, basic rate without adjustments).

### III. PRINCE'S SOLICITATION OF BENEFICIARIES AND REFERRAL TO ASSOCIATED HOME HEALTHCARE AGENCIES

17.    Part of Prince's duties included fielding calls from SB beneficiaries or their family members or caretakers.  In this context, either when he received a call from a beneficiary or caretaker or by reaching out directly to such individuals, Prince would inform beneficiaries and/or their caregivers that they were entitled to home health care through the VA.  Prince would tell them that the caregivers could receive payment for providing home health by signing up as a contractor through a home health care agency. In some instances, he would also coach them on the number of hours of services they could claim and send prepopulated forms to the beneficiaries identifying the number of hours to provide. He would also have them submit claims for one year retroactive for the same number of hours.

18.     Prince would then refer the beneficiaries or caretakers directly to a home health care agency ("HHA") that was controlled by his wife or other associates (the "subject HHAs"). The subject HHAs submitted claims totaling millions of dollars to the VA, which the VA paid.  The subject HHAs then paid Prince in exchange for the referrals.

19.    As part of the investigation, law enforcement agents have listened to numerous phone calls made and received by Prince from his VA office phone,

telephone number 303-331-7786.  The recorded calls reflect that beneficiaries and caregivers reach out to Prince for many reasons, to include discussing claims that they have filed or that have been filed on their behalf and making sure they are getting paid appropriately. During these calls, Prince often takes the opportunity to explain the benefits he says they are missing out on.

20.     Prince tells the caregivers that they can receive the payments discussed above for their caregiving, and that he has a company that he works with often and knows they are good, that they pay the most, that they are "vetted" or "preferred providers" for the program, or other positive reasons for him setting up the beneficiaries with a particular company.

21.     Prince then refers the beneficiaries or caregivers to the subject HHAs. Next, the agencies sign up the caregivers as independent contractors, paying them different rates; ranging from $16 to $20 per hour.  The allowable rate to bill the VA is in accordance with published Medicare rates (or CMAC) that are adjusted according to locality. The chart below shows the rates allowable for each of the subject HHAs and what the subject HHAs billed per unit. Each unit represents 15 minutes.

| HHA | Location | Billed/unit | Billed/hour | CMAC 2017 (per unit/per hour) | CMAC 2018 (per unit/per hour) |
|---|---|---|---|---|---|
| Advantage HHA | Aurora, CO | $22.50 | $90 | $24.39 / $97.56 | $35.29 / $141.16 |
| Genesis HHA | Aurora, CO | $22.57-24.39 | $90.28-$97.56 | $24.39 / $97.56 | $35.29 / $141.16 |
| Gracewood HHA | Fort Collins, CO | $22.00 | $88 | $24.39 / $97.56 | $35.29 / $141.16 |
| Legacy HH | St. Petersburg, FL | $21.50 | $86 | $24.39 / $97.56 | $35.29 / $141.16 |

| Regional Home Health Care Systems | Lithia Springs, GA | $22.00 | $88 | $24.39 / $97.56 | $35.29 / $141.16 |
|---|---|---|---|---|---|

22.     The contract between the HHAs and the independent contractor is not monitored or regulated by the VA.

23.     In addition to the home health services, beneficiaries can receive homemaker services if preauthorized and subject to a plan of care. The CMAC rates for 2017 were $4.88 per unit or $19.50 per hour. The CMAC rates for 2018 were $5.00 per unit or $20 per hour.  In the beginning of the scheme, the subject HHAs submitted claims for both homemaker and home health services. Over time, most of the claims submitted were for home health services only. During some of Prince's calls with caregivers or beneficiaries, he tells them that they should do homemaking services but bill them as home health because that pays more.

**Advantage Home Health Agency**

24.     Advantage Home Health Agency ("Advantage") is a Colorado Limited Liability Corporation incorporated on July 31, 2017.  Advantage established an NPI on August 1, 2017.  Advantage submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than August 28, 2017. The registered agent is Flavia Nalunga Prince ("Nalunga"), Prince's wife, and the registered address (at the time the business was formed) is 5877 S. Duquesne Court, Aurora, Colorado 80016 (Prince's residence). The business address has since been updated to be a P.O. Box at a UPS Store near the Princes' residence. Advantage does not have an internet presence such as a website or social media page.

25.     In total, as of August 16, 2018, the VA had paid Advantage approximately

$4,335,851 in payments for claims submitted under the VA's SB Health Care Benefits

Program as a result of the referrals made by Prince in order to directly benefit Prince's

wife and himself.

26.     Upon review of the known bank statements as of June 14, 2018,

Advantage did not have any other significant sources of income.

27.     Examples of the referrals made by Prince to Advantage are as follows:

a.  On August 28, 2017, Prince talks to beneficiary E.N. about the benefits he

    is already receiving through the VA's SB Health Care Benefits Program.

    E.N. was using a home health agency to provide homemaking services

    essentially for house cleaning. Prince tells E.N. that he does not think that

    E.N. should continue to use the current homemaker services that he is

    using because his wife could get paid for the same thing and it would

    amount to approximately $50,000 per year between the bowel and bladder

    care (paid as a direct benefit from the VA, as discussed above) and

    homemaker services rendered (to be billed through a home health agency

    as an independent contractor). Prince tells E.N. that he should go through

    a different company to get paid for the homemaker services because the

    home health agency E.N. was already using "charges the highest and

    pays people the lowest." E.N. and Prince discuss Prince sending him the

    details for the arrangement.

b.  In an email dated August 29, 2017, from Joseph.Prince@VA.gov to E.N.,

    Prince sends attachments and instructions for completing forms necessary

to receive the home health services, specifically the Form CMS-485, Home Health Certification Plan of Care. There are two copies of the form, one for retroactive claims (9/1/2016 through 8/31/2017) and one for claims going forward (9/1/2017 through 8/31/2018).  Both forms already had Advantage Home Health Agency prepopulated in the space for the provider's name. Prince's email also stated that he would have Advantage call him about signing a contract.

c.   Prince also reached out directly to Advantage, via email, directing the home health agency on how to do business.  In an email dated August 29, 2017, from Joseph.Prince@VA.gov to advantagehha1@gmail.com, Prince wrote:

"New patient: [E.N.] Sent him the 485's today. Need to send him two contracts and a W9 for his wife to sign and do home health services only, no home maker services. A caregiver is already doing that.

New patient: C.S. Sending 485s today. Keep alive until I get them to understand the program. No more than $15.00 per hour for them.

New patient: T.F. Needs new power wheelchair. Will call them to find out if they need other services…don't do anything yet.

d.   E.N. was interviewed by FBI agents in September 2018. E.N. stated that Prince told E.N. that Flavia at Advantage Home Health was a reliable agency to work with. E.N. stated that Prince did not put any pressure on E.N. to use Advantage, but that Prince did not provide the names of any

other agencies. E.N. executed a contract with Advantage and Flavia to be paid for the care provided by E.N.'s wife.

e.  E.N.'s wife signed up as a provider with Advantage, which then submitted claims to the VA for her services.

### Genesis Home Health Agency

28.  Genesis Home Health Agency ("Genesis") is a Colorado limited liability corporation incorporated on August 29, 2016.  Genesis established an NPI on March 1, 2017. Genesis submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than May 15, 2017. The registered agent is Andrew Ssekajja and the registered address is 5877 S. Duquesne Court, Aurora, Colorado 80016.  Ssekajja is a licensed pharmacist in Colorado. Genesis does not have an internet presence such as a website or social media page.

29.  In total, as of August 16, 2018, the VA had paid Genesis approximately $3,199,339 in payments for claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.

30.  Upon review of the known bank statements, as of June 14, 2018, Genesis did not have any other significant sources of income.

31.  Examples of the referrals made by Prince to Genesis are as follows:

a.  On August 3, 2017, Prince speaks with caregiver S.K. about signing up for home health care benefits and tells S.K. that she can get paid for doing what she is already doing by signing up with Genesis. Prince shares that Genesis is one of the most successful agencies at doing that. It is the only agency that Prince has received compliments on. Prince says he will save

her the trouble of filling in the 485 and will email it to S.K. so she can have the doctor sign. Prince told S.K. that they can start the home health care claims from the date they started the bowel and bladder care, which is April 2017. Prince tells S.K. that she needs to fill in the total hours depending on what the doctor says, from 8 to 10 to 12, whatever. Prince says the homemaker services are pretty much set at two to three hours per day.

b. In an email dated August 4, 2017, from Joseph.Prince@VA.gov to S.K., Prince provides S.K. with two separate CMS 485s. One covers the homemaker services and the other covers the unskilled home health services. The information is prepopulated on both with Genesis listed as the provider.

c. S.K. submitted a signed CMS 485 to Genesis, which started submitting claims on her behalf.

### Legacy Home Health, LLC

32.    Legacy Home Health, LLC (Legacy) is a Florida limited liability corporation incorporated on September 25, 2017.  Legacy established an NPI in or around September 2017. Legacy submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than October 30, 2017. The Registered agent is Roland Vaughn at 970 Lake Carillon Drive, Suite 300, St. Petersburg, Florida 33716.  According to commercial law enforcement databases, Vaughn resided at various addresses in the Denver, Colorado, metro area from approximately 1993 to 2018. Vaughn was a real estate agent in Colorado for 15 years and acted as the realtor when Prince purchased

his home at 5877 S. Duquesne Court, Aurora, CO 80016 in 2014. Legacy does not have an internet presence such as a website or social media page.

33.     In total, as of August 16, 2018, the VA had paid Legacy approximately $3,039,761 in payments for claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.  Prince had an agreement with Vaughn to receive approximately forty percent of the net proceeds from Legacy.

34.     Upon review of the known bank statements as of March 25, 2018, Legacy did not have any other significant sources of income.

35.     Examples of the referrals made by Prince to Legacy are as follows:

   a.  In a telephone call on March 6, 2018, Prince tells caregiver L.M. that his main goal is to educate everyone about the benefits the program has to offer and explains to L.M. that she can receive payments for care she already provides. L.M. asks how she can get access to this or who to contact.  Prince informs her that he does all the logistical stuff. Prince says that he knows based on the provider who will best match with the caregiver. Prince says all the home health paperwork goes to Legacy Home Health.

   b.  In a telephone call on March 23, 2018, Prince returns a call from L.M. about the log sheets. L.M. says she did not know how to fill out the dates, so she filled out the date the doctor signed the paper. L.M. sent the paperwork via priority mail. L.M. then mentioned a sticky note attached to the CMS 485 forms that said she should get them signed and give them to Mr. Vaughn. L.M. was to get three documents signed by the doctor, a

CMS 485 for last year, a CMS 485 for this year, as well as the letter of medical necessity.

c. L.M. submitted the CMS 485s with the doctor's signature to Legacy, which started submitting claims on her behalf, including a full year of retroactive claims.

### Regional Home Health Care Systems

37. Prince's half-sister, Marcelline Stripling (nee McCrea), established three home health agencies in Lithia Springs, Georgia: 1) Regional Home Health Care Systems, LLC, incorporated on August 21, 2017, 2) Regional Home Healthcare Systems, North LLC, incorporated on February 23, 2018, and 3) Regional Home Healthcare Systems, East LLC, incorporated on March 4, 2018 (collectively, these businesses are referred to as "Regional").  Regional submitted its NPIs along with Forms W-9 to the VA and became a vendor no later than September 26, 2017. Regional does not have an internet presence such as a website or social media page.

37. In total, as of August 16, 2018, the VA has paid Regional approximately $7,169,974.00 in payments for fraudulent claims submitted under the VA's SB Health Care Benefits Program as a result of the referrals made by Prince.

38. Upon review of the known bank statements as of May 31, 2018, Regional did not have any other significant sources of income.

39. Examples of the referrals made by Prince to Regional are as follows:

a. On April 18, 2018 Congressman John Moolenaar, U.S. Representative for the 4th District in Michigan, received a complaint from E.L. about the VA's

SB Health Care Benefits Program in which E.L. wrote the following (in summary):

*Our daughter is in the Spina Bifida Program. The program has a provision to provide health care for her at home for the rest of her life. We were told that we would be paid for this. We signed a contract with a company that would take care of getting us paid, but they didn't tell us that they got to keep 82% and pay us 18% for doing all the work. This is highway robbery.*

The complaint included a copy of the contract and a one-page example of an Explanation of Benefits received by E.L. on behalf of his daughter.

b.   E.L. was interviewed by FBI and VA-OIG agents on May 16, 2018. During the interview E.L. explained how he came to send a complaint to the Representative. E.L. reached out to the VA in October 2016 and received a packet of information including a description of the benefits provided to beneficiaries of the VA's SB Health Care Benefits Program including the home health care benefits from employee I.K.

c.   E.L. reached out again in early 2018 and was told to talk to Prince regarding his questions. Prince explained the program to E.L. When E.L. asked which company to sign up with, Prince told him Regional because they were the best ones and paid the most.  Prince put E.L. in contact with Marcelline Stripling at Regional who provided the contracts and other paperwork to get started. The contract was between G.L. (E.L.'s wife) and Regional. Regional was going to pay G.L. $16 per hour.

d.  E.L. discussed the contracts and signing up with Regional with both Stripling and Prince. Prince informed E.L. that the VA also allowed to bill for services rendered up to a full year ago.

e.  G.L. completed time sheets for each week starting in or around February 2017 through present for 20 hours per day for care of their daughter and submitted them to Regional.

f.  Upon approval of the claims, the VA sends out an Explanation of Benefits (EOB), as they do when patients receive any type of benefit. When E.L. received the first EOBs in April 2018, he noticed that for six days of care in 2017, Regional billed the VA $10,560, but G.L only received $1,920.

g.  E.L. contacted Stripling about the difference.  Stripling told E.L. that Regional had overhead.

h.  On April 3, 2018, E.L. called Prince to complain about the difference.

i.  With respect to separate beneficiaries Prince referred to Regional, as examples:

  i.  In a telephone call on May 10, 2018, a female, C., asks Prince, "you know that lady you set us up with? That Marcelline Stripling?" C. continues to explain that she has not received the check that Stripling was supposed to send her.

  ii.  In a telephone call on May 10, 2018, a caregiver, J.P., calls Prince to complain about the current company that is submitting claims on their behalf and gets a referral from Prince for a new company and Prince

suggests she call Marcelline Stripling with Regional Home Health Systems.

### Gracewood Home Health Agency

40.     Gracewood Home Health Agency (Gracewood) is a Colorado limited liability corporation incorporated on November 10, 2017.  Gracewood established an NPI on November 16, 2017. Gracewood submitted its NPI along with a W-9 to the VA and was entered as a vendor no later than December 18, 2017. The registered agent of Gracewood is Glenn Beach at 1281 East Magnolia Street, Unit D, Ft. Collins, Colorado 80524.  Glenn's wife, Catherine Beach, is also listed on the Articles of Organization as the person forming the business, Gracewood.  According to Colorado Department of Labor, Catherine Beach last received wages from Thompson School District R2J in 2011. Bank records show that she receives income from multi-level marketing schemes as well. Glenn Beach last received wages in Colorado from Wolf Robotics LLC in 2009. Gracewood does not have an internet presence such as a website or social media page.

41.     In total as of August 16, 2018, the VA has paid Gracewood approximately $1,440,512 for fraudulent claims submitted under the VA's SB Health Care Benefits Program.  The Beaches and Prince had an agreement that Gracewood would pay approximately fifty percent of its net revenue to Prince.

42.     Upon review of the known bank statements as of May 31, 2018, Gracewood did not receive business income from or have any other source of income during this time-frame.

43.     Examples of the referrals made by Prince to Gracewood are as follows:

30

a.  In a telephone call on January 5, 2018, R.A. a caregiver, contacted Prince about the program related to incontinence that Prince had previously mentioned. Prince described the program as "life changing." He told R.A. to "take it, it's there. Because you are a parent, don't apologize for that. It's a lot of money, so that's why they don't ever tell you about it… Imagine 1100 people getting $20,000 up front for bowel and bladder." Prince continued to explain that R.A. would get paid for bowel and bladder care for the entire year prior since they have a year to submit claims.  Prince and R.A. discussed the amount of hours per day that R.A. cares for the beneficiary. Prince explained to R.A. that if she billed for the maximum amount of 18 hours per day, she would receive approximately $300 per day.

Prince asked if R.A. was ok with one of the preferred providers from Colorado and R.A. did not have a preference.  Prince also explained to R.A. that they will bill the time as home health care services because R.A. would get paid more for that than she would if they described the time as homemaker services. Homemaker services only pays $5 per hour, where home health services pay $16, which is much better.

b.  In an email dated January 16, 2018, from Joseph.Prince@VA.gov to R.A., Prince provides R.A. with a prepopulated CMS 485, which listed Gracewood as the provider. Gracewood submitted claims on R.A.'s behalf for the period January 1, 2017 through present.

    c. In an interview on September 17, 2018, R.A. told investigators that she spoke with Prince who provided information on how to enroll in Gracewood's program.

## IV. ILLEGAL PAYMENT OF REWARDS AND KICKBACKS

44.    Advantage, Regional, Legacy, Genesis, and Gracewood were all established by individuals who had connections to Prince and no apparent prior history with home health. The companies were all established shortly before beginning to submit claims to the VA, and based on bank records obtained to date, none of the agencies have any income generated through other patients outside of the VA's SB Health Care Benefits Program.

45.    After receiving payments on their claims from the VA, the agencies identified below sent payments to Prince either directly to Prince's personal bank accounts and business accounts controlled by Prince, or indirectly to Prince's wife and children. In total, based on records available as of the various dates listed in the proceeding paragraphs, covering the time period up through as recent as June 19, 2018, Prince benefited in the amount of approximately $2.32 million, broken out by HHA below:

    a. Advantage sent payments of approximately $732,475 to accounts controlled by Prince or related parties, including:

      i. $568,649 to personal accounts in the names of Prince and Nalunga;

      ii. $19,500 in wires and cashier's checks payable to Nalunga;

      iii. $50,000 to a SEP IRA account in the name of Joseph Prince;

      iv. $50,000 to a SEP IRA account in the name of Nalunga;

      v.  $24,326 check payable to Doctor Fix.  The memo line of the check stated "HVAC Equipment."

     vi.  $10,000 to a savings account in the name of Elijah Prince, Prince's son; and

    vii.  $10,000 to a savings account in the name of Elisha Prince, Prince's daughter.

b.  Legacy transferred or credited approximately $1,007,205 to accounts in the name of Crosswalk Consulting LLC (Crosswalk).  Crosswalk is a Colorado limited liability corporation incorporated on November 6, 2017.  The registered agent is Joseph Prince.

c.  Roland Vaughn executed a check payable to Joseph Prince in the amount of $2,000.

d.  Gracewood sent approximately $519,572 to accounts held in the name of Crosswalk.

e.  Regional transferred or wired $26,000 to an account in the name of Great ExpecTastings Catering (GETC).  GETC is a Colorado limited liability corporation incorporated on December 11, 2015.  The registered agent is Joseph Prince.  Prince is the sole signatory on the bank account.

f.  Regional executed a check payable to Venture Homes Inc. in the amount of $3,930.  The memo on the check stated "Upgrades Lot 121 Barrington, Joseph & Flavia Prince."

g. Regional executed a check payable to Venture Homes Inc. in the amount of $10,107.  The memo on the check stated "Venture Homes upgrades on #121 BT for Joseph C. Prince."

h. Genesis executed a check payable to Nalunga in the amount of $12,883.

i. Andrew Ssekajja executed a check payable to Nalunga in the amount of $6,100.

46.    Prince had a discussion on his recorded work line with Vaughn (Legacy) regarding such payments.

a. In a telephone call on March 2, 2018, Vaughn asks Prince if he can speak freely and begins to say, "I sent 30 and 45." Prince then says, "Not on this line."

b. On March 1, 2018, there was a $30,000 ACH from Academy Bank account 9200091094 registered to Legacy Home Health, LLC with the description, "Legacy Home Heal Joe Prince 107001481."  Per ACH detail, the beneficiary account was a JP Morgan Chase account 936007280 in the name of Crosswalk Consulting.

c. On March 2, 2018, there was a $45,000 ACH from Academy Bank account 9200091094 registered to Legacy Home Health, LLC with the description, "Legacy Home Heal Joe Prince 107001481."  Per ACH detail, the beneficiary account was a JP Morgan Chase account 936007280 in the name of Crosswalk Consulting.

47.    On June 22, 2018, Glenn Beach was interviewed by law enforcement agents.  Beach stated that around October 2017, Prince approached him and Catherine

Beach about acting as a liaison with families that needed assistance.  As a result of Prince's proposal, the Beaches established Gracewood and began submitting claims to the VA on behalf of SB beneficiaries.  Beach told law enforcement that he believed it appropriate to pay Prince a commission and that Prince told Beach that fifty percent was customary.  Since founding Gracewood, Beach estimated that he paid Prince $500,000 in commission.  Prince directed Beach to make the commission payments to Prince's consulting company, Crosswalk Consulting, and that Prince e-mailed Beach the bank account numbers.

48.     Beach made a consensually monitored phone call to Prince at the conclusion of the interview.  During the call, Prince acknowledged receiving the commission payments from Beach and that the arrangement was to help both Prince and Beach to get out of their current financial mess.  Prince also acknowledged that his role in the scheme was "dicey" and that he does not know if the arrangement is legal, stating, "It may not be".  Referring to the commission, Prince stated that at first fifty percent sounded good, but ten percent may be more reasonable to avoid scrutiny from a financial person such as an accountant doing Gracewood's financials.  Later in the conversation, Prince told Beach that when you're dealing with this kind of money, "all it takes is one person to say something and that's the end of it for everybody".  Prince told Beach that Gracewood's business is legal and the only questionable part is Prince's role in it.  Asked by Beach if he had a conflict of interest, Prince replied, "Personally, no. Professionally…I believe it would be."  Prince went on to tell Beach that "everything is fine if nobody finds out".  At the end of the conversation, Prince alluded to changing the

arrangement to tone down the appearance of his involvement and avoid putting Beach in a bad position.

49.     On June 22, 2018, Roland Vaughn, the owner of Legacy Home Health, was interviewed by law enforcement agents at his residence in Florida.  Vaughn told law enforcement that Prince helped him set up Legacy and that Prince referred all six of the SB Beneficiaries that Legacy submitted benefits for to the VA.  Vaughn stated that Prince directed him to pay Prince forty percent of Legacy's net profit.  The payments were made to Prince's company, Crosswalk Consulting.

50.     On June 25, 2018, Marcelline Stripling was interviewed by law enforcement agents at her residence in Georgia.  Stripling stated that Prince introduced her to the idea of starting Regional.  Prince referred all of the SB beneficiaries that were clients of Regional, to Regional.  While operating Regional, Stripling paid $26,000 to Prince which she described as payment for catering services and that Prince sent food to Georgia from Denver.  Stripling later retracted that statement and told law enforcement that the money paid to Prince was a gift.  Prince directed her to pay the money to a bank account in the name of Great ExpecTastings Catering, a company owned and controlled by Prince, and provided her with the routing and account number. Stripling denied ever having a conversation with Prince about paying him for the referrals he made to Regional.

### V. HEALTH CARE AND WIRE FRAUD

51.     From July 1, 2017 to June 30, 2018, the VA paid out approximately $25.2 million to a combination of 59 home health care agencies for the VA's SB Health Care Benefits Program. Of the total, approximately $18.9 million was paid to the five

companies to whom Prince made referrals: Advantage, Genesis, Regional, Legacy, and Gracewood.

52.     There are at least two reasons for the disproportionate payment to the Prince-associated entities: hours inflation and retroactive claim submission.

      a.     The claims submitted by the subject HHAs are often for 18 to 20 hours of health care services per day. While some claims submitted by the HHAs for the Prince-referred beneficiaries are as few as five hours per day, the majority are for twelve or more hours per day.  It appears other HHAs are submitting claims for fewer hours than the subject HHAs and include homemaker services, which are billed at a lower rate.

      b.     Once a new beneficiary is signed up by the subject HHAs, they submit retroactive claims for a full year prior for the same high hours.  It does not appear that the other HHAs submit claims for prior services.

53.     As identified above, the regulations governing the VA's SB Health Care Benefits Program provide that only certain types of services are covered.  The regulations enumerate the types of services covered, such as assistance with personal care and meal preparation. These specific tasks are compensated on a quarter-hour basis, indicating that an accounting of time for each specific service is necessary. Excluded from compensation are services such as "companion services" and personal attendant services that are not health related.

54.     Nevertheless, Prince encouraged beneficiaries and caregivers to whom he spoke to bill for time above and beyond what would be spent on enumerated tasks.  For example:

a. Prince spoke with beneficiary, E.N., identified above. Prince asked E.N. who his primary caregiver was, and E.N. replied, "myself."  E.N. runs a pool cleaning business and prior to talking to Prince was using home health services only for weekly cleaning of his home.  Prince recommended that E.N.'s wife begin providing homemaking services and be paid for them through a home health agency. Prince sent E.N. a prepopulated Form CMS-485 with Advantage filled in as the provider. In the cover email, Prince states that he added a space for the doctor to indicate how many hours per day, stating it was a "(minimum 8, up to 24)." There is no minimum hour requirement for home services.

b. On September 20, 2017, E.N. called Prince to discuss the forms and ask what needs to be signed by the doctor. Prince says, "Home health pays through a provider 16 an hour for 8 hours a day." E.N. says, "That's the grooming," and Prince responds, "yes, and like I told you, I don't care whether she does it or not, you get paid for that sir, so don't leave the money on the table. So she grooms you." Prince continues, "I am not saying cheat, but I'm saying do what Philip Rivers does, cheat all the time."

c. In a telephone call on March 6, 2018, Prince asks caregiver L.M. how many hours a day she is comfortable leaving the beneficiary by himself. L.M. says that she does not leave him alone. Prince says, "So that means 24 hours a day." L.M gets one of the kids to stay with him or takes him with her. Prince told her he would fill in the 485 safely with up to 20 hours

per day, but there would have to be two people on the contract with the HHA. L.M. is also compensated by the VA four hours per day for bowel and bladder care.

55.   In a case where a caregiver is being paid for four hours a day for bowel and bladder care, claiming an additional 20 hours (or even 16 or 18) a day of home health aide care is simply not possible and does not allow for sleep, grooming, and care of one's individual self.

56.   On August 6, 2018, beneficiary M.E. and caregiver J.M. were interviewed by law enforcement agents. M.E. and J.M. were told by Prince to charge for the maximum number of hours that the doctor said M.E. was eligible for even if J.M. was not actually providing care for that many hours. M.E. and J.M. had independent conversations with Prince on the matter.

57.   On August 10, 2018, caregiver A.T. was interviewed by law enforcement agents. A.T. said that Prince would explain to her that it was a shame that A.T. just started receiving these benefits despite having cared for her son for his whole life. Prince told her to charge the maximum number of hours even if she did not work them because she needed to make up for lost time.

58.   During the timeframe of the alleged scheme, financial transactions out of the Crosswalk Consulting bank accounts controlled by Prince included:

  a.  $304,000 in transfers to personal bank accounts in the name of Prince and Nalunga;

  b.  $135,228 in payments to organizations related to Pastor Chris Hill;

  c.  $58,000 in wire transfers to Timothy St Cyr, a half-brother of Prince;

d. $50,000 deposit to a Simplified Employee Pension (SEP) IRA account in Prince's name;

e. $30,000 to individuals associated to The Potter's House of Denver, a local church that Prince was a member;

f. $41,000 in payments to various relatives of Prince;

g. $16,350 in payments towards the loan on a 2011 Toyota Sienna passenger van registered in Prince's name;

h. $15,452 in payments towards student loans;

i. $13,000 in deposit to a Betterment Wealth Builder Account in Prince's name;

j. $13,000 in wire transfers to Jason Prince, a relative of Prince;

k. $9,800 in wire transfers to Ghazi Marketing, a company located in Trinidad and Tobago;

l. $7,500 payment to Venture Homes as earnest money towards the purchase of a newly constructed home at 2348 Barrington Trace Circle, Atlanta, GA 30331;

m. $6,939 payment to Marc Lichtenfeld, author and Chief Income Strategist for the Oxford Club;

n. $5,037 to Goldline, a dealer in precious metals; and

o. $5,000 wire transfer to June St Cyr, a relative of Prince.

59.     This fraud on the program was also carried out through the one-year retroactive claims submission.  Once a caregiver was signed up through a HHA, the HHA, with Prince's assistance, would submit claims for the same number of hours for a

full year.  Such retroactive claims could result in a payment of approximately $500,000 or more to the HHA for one beneficiary.

60.     As a provider of home health care services, it is the responsibility of the home health agencies (HHA) to submit claims to the VA. The HHAs take the caregivers hand-written hours log, convert the hours to billable units, and submit the claims to the VA.

61.     In many cases, neither Prince nor the subject home health agencies informed the beneficiaries or caregivers that there was a limited set of tasks that were compensable as home health, nor that they were to track the performance of those tasks in 15-minute increments.  Often, the subject home health agencies would send "sample" daily log sheets identifying the hours the beneficiary could write down and the tasks to check off as performed.  In some instances, Prince or others informed beneficiaries or caregivers that the more boxes they checked the better and not to identify certain tasks that they completed on the form because they were not compensable.

## VI.  INDICTMENT AND RELATED INVESTIGATION

62.     On June 21, 2018, Joseph Prince was indicted on seven counts of violating Title 18 U.S.C. §§ 208(a) and 216(a)(2) (Acts affecting a personal financial interest).  The indictment alleges that between September 11, 2017, and June 1, 2018, the VA paid Advantage approximately $4.3 million for claims associated with services provided to SB beneficiaries.  The indictment alleges that Prince willfully participated personally and substantially as a Government employee through recommendation, the rendering of advice, and otherwise, in a particular matter in which to his knowledge his

spouse had a financial interest, namely, through recommendation, referral, and direction that SB beneficiaries and SB beneficiary caretakers use Advantage in connection with home health and homemaking services, and for submitting claims to the VA for such services, provided for the benefit of several SB beneficiaries.

63.     On December 4, 2018, Joseph Prince was indicted on 16 counts of violating Title 18 U.S.C. §1347 (Health care fraud). The indictment alleges that between about June 2017 and June 2018 along with others known and unknown knowingly and willfully executed and attempted to execute a material scheme to defraud the VA SB health care benefits program in connection with the delivery of and payment for health care benefits, items and services. Prince would tell beneficiaries and/or caregivers that the VA would pay for 24 hours of care per day and would encourage the caregivers to charge for every moment that they spent with the beneficiary. He would not explain to them the tasks that the VA actually paid for caregivers to perform for the beneficiaries. In addition, Prince would tell them they could submit claims for services provided one full year retroactive to when they would sign up as a contractor.

64.     On December 4, 2018, Joseph Prince was also indicted on 6 counts of Title 18 U.S.C. §201(c)(1)(B) (Bribery of public officials and witnesses).  The indictment alleges that Prince accepted approximately $623,848 in payments from Legacy and Gracewood for his official actions, that is, the recommendation, referral, and direction that SB beneficiaries and SB beneficiary caregivers use Legacy and Gracewood in connection with home health services and for submitting claims to the VA for such services.

65.    On December 4, 2018, Roland Vaughn was indicted on 3 counts of Title 18 U.S.C. §201(c)(1)(A) (Bribery of public officials and witnesses). The indictment alleges that Vaughn paid Prince, a VA employee approximately $411,736 in three separate payments for and because of an official act performed by Prince in his official capacity at the VA, that is, the recommendation, referral and direction that SB beneficiaries and SB beneficiary caregivers use Legacy in connection with home health services, and for submitting claims to the VA for such services.

66.    On December 4, 2018 Joseph Prince and Roland Vaughn were indicted on one count of Title 18 U.S.C. §371 (Conspiracy to commit and offense against the United States). The indictment alleges that Prince and Vaughn conspired to pay gratuities to Prince as a public official in violation of Title 18 U.S.C. §201(c)(1)(A).

67.    On December 4, 2018, Joseph Prince was also indicted on 8 counts of Title 18 U.S.C. §1957 (Engaging in monetary transactions in property derived from specified unlawful activity).  The indictment alleges that Prince knowingly engaged in monetary transactions exceeding $10,000 that were derived from specified unlawful activities, that is health care fraud in violation of Title 18 U.S.C. §1347 or soliciting and receiving gratuities in violation of Title 18 U.S.C. §201(c)(1)(B).

68.    On December 4, 2018 Joseph Prince was also indicted on 3 counts of Title 18 U.S.C. §1956(a)(1)(B)(i) (Laundering of monetary instruments). The indictment alleges that Prince conducted transactions using proceeds of specified unlawful activities, that is soliciting and receiving gratuities in violation of Title 18 U.S.C. §201(c)(1)(B), designed to conceal and disguise the source, ownership, and control of those proceeds.

69.     The investigation of Prince and others associated with the scheme is ongoing.

## VII.     FLOW OF FUNDS

### *Advantage Home Health Agency, LLC*

#### a.  Defendant $68,145.34 seized from Advantage Bellco Account #2910

70.     Flavia Nalunga opened Bellco Credit Union business checking account #599362910 (Advantage Bellco account #2910) in the name of Advantage Home Health Agency on August 7, 2017.  Nalunga is the sole signor on the account.

71.     From September 11, 2017 to February 22, 2018, the only significant source of funds to Advantage Bellco account #2910 were deposits from the U.S. Treasury in the amount of $3,159,671. These U.S. Treasury checks represent reimbursement for the  VA SB health care benefits program.

72.     From August 7, 2017 to March 21, 2018, significant uses of funds from Advantage Bellco account #2910 were caregiver payments of approximately $670,676; wire transfer and cashier's check payable to Nalunga totaling $210,000; payments to the Colorado Department of Revenue, totaling approximately $99,534; payments to Joseph and Flavia Prince JP Morgan Chase (JPMC) account #635479809 of approximately $78,600; $50,000 to Flavia SEP IRA account #4000751438 at American Funds (Capital Bank and Trust); $50,000 to Prince SEP IRA account at Jackson National Life Co. account #1020955836; and one wire to the U.S. Treasury of $34,935.

73.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in defendant Advantage Bellco account #2910 and seized $37,905.34.

74.     On June 28, 2018, Bellco informed investigators that additional U.S. Treasury funds were deposited into the account subsequent to the seizure warrants executed by the FBI.  On July 2, 2018, law enforcement executed a second seizure warrant against Advantage Bellco account #2910 and seized $30,240.00.

75.     In total, $68,145.34 was seized from defendant Advantage Bellco account #2910.

**b. Defendant $1,285,623.35 held in Bellco Credit Union Bank Account #599517901 in the name of Advantage Home Health Agency LLC**

76.     Flavia Nalunga opened Bellco business checking account #599517901 (Advantage Bellco account #7901) in the name of Advantage Home Health Agency on September 12, 2017.  Nalunga is the sole signor on the account.

77.     From September 14, 2017 to February 24, 2018, the only significant source of funds to Advantage Bellco account #7901 were account transfers from Advantage Bellco account #2910, totaling approximately $1,964,685.

78.     From September 12, 2017 to February 28, 2018, significant uses of funds from Advantage Bellco account 7901 were payments to Prince JPMC account #9809 of approximately $225,044; a cashier's check payable to Nalunga of $55,000; and one cashier's check payable to the Divine Victory Apostic Mission of $20,000.

79.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Advantage Bellco account #7901 and seized $1,285,623.35.

**c. Defendant $10,008.31 held in Bellco Credit Union Bank Account #599965977 in the name of Elijah Prince.**

80.     Flavia Nalunga Prince opened Bellco savings account #599965977 (Elijah Prince Bellco account #5977) in the name of Elijah Prince on December 29, 2017. Flavia Nalunga Prince and Elijah Prince are the sole signors on the account.

81.     On January 11, 2018, Elijah Prince Bellco account #5977 received a $10,000 deposit from Advantage Bellco account #2910.  Between January 11, 2018, and February 28, 2018, interest of $8.31 accrued on the account bringing the account balance to $10,008.31.  This deposit was the only significant source of funds to the account.

82.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Elijah Prince Bellco account #5977 and seized $10,008.31.

**d. Defendant $10,008.30 in Bellco Credit Union Bank Account #599965928 in the name of Elisha Prince**

83.     Flavia Nalunga Prince opened Bellco savings account #599965928 (Elisha Prince Bellco account #5928) in the name of Elisha Prince on December 29, 2017.  Flavia Nalunga Prince and Elisha Prince are the sole signors on the account.

84.     On January 11, 2018, Elisha Prince Bellco account #5928 received a $10,000 deposit from Advantage Bellco account #2910.  Between January 11, 2018, and February 28, 2018, interest of $8.30 accrued on the account bringing the total to $10,008.30.  This deposit was the only significant source of funds to the account.

85.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Elisha Prince Bellco account #5928 and seized $10,008.30.

**e. Defendant $210,064.42 seized from Prince JP Morgan Chase account #9809.**

86.     Joseph Prince opened JP Morgan Chase (JPMC) account #635479809 (Prince JPMC account #9809) in the name of Joseph and Flavia Prince on June 27, 2007.  Prince and Flavia are the sole signors on the account.

87.     From December 29, 2017 to March 19, 2018, Prince JPMC account #9809 received payments from Advantage Bellco bank accounts, totaling approximately $303,644.  These payments included $225,044 from Advantage Bellco account #7901 and $78,600 from Advantage Bellco account #2910.

88.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Prince JPMC account #9809 and seized $6,440.42.

89.     Prior to the execution of the June 22, 2018, warrant, approximately $197,000.00 was transferred to a corresponding JP Morgan Chase savings account.

90.     After account #9809 was liquidated pursuant to the warrant, approximately $197,000.00 was transferred back to JP Morgan Chase account #9809.

91.     On June 29, 2018, law enforcement executed a second seizure warrant for Prince JPMC account #9809 and seized $203,624.00.

92.     In total, law enforcement seized $210,064.42 from Prince JPMC #9809.

   **f.  Defendant $45,144.07 seized from Jackson National Life Company life insurance policy #1020952900 in the name of Joseph Prince**

93.     Joseph Prince opened Jackson National Life Company (Jackson) life insurance policy account #1020952900 (Prince Jackson account #2900) on January 11, 2018. Prince is the sole owner of the policy.  Flavia Nalunga is the beneficiary of the policy.

94.     On January 25, 2018, Prince funded Prince Jackson policy #2900 with personal check #2608 from Prince JPMC account #9809 in the amount of $50,000.  On

January 24, 2018, Prince JPMC account #9809 was funded with a cashier's check in the amount of $225,043.81 from Advantage Bellco account #7901.

95.     This deposit to Prince Jackson account #2900 was the only source of funds to the policy.

96.     On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Prince Jackson account #2900 and seized $45,144.07.

**g. Defendant $45,279.02 seized from Jackson National Life Company life insurance policy #1020964665 in the name of Flavia Nalunga**

97.     Flavia Nalunga opened Jackson National Life Company (Jackson) life insurance policy account #1020964665 (Nalunga Jackson account #4665) on January 15, 2018. Flavia is the sole owner of the policy.  Joseph Prince is the beneficiary of the policy.

98.     On January 26, 2018, Prince funded Flavia Jackson account #4665 with personal check #2609 from Prince JPMC account #9809 in the amount of $50,000.  On January 24, 2018, Prince JPMC account #9809 was funded with a cashier's check in the amount of $225,043.81 from Advantage Bellco account #7901.

99.     This deposit to Nalunga Jackson account #4665 was the only source of funds to the policy.

100.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Nalunga Jackson account #4665 and seized $45,279.02.

**h. Defendant $42,351.34 held in American Funds SEP IRA account #4000751438 in the name of Flavia Nalunga**

101.    Flavia Nalunga opened American Funds (AF) SEP IRA account #4000751438 (Nalunga AF account #1438) on January 11, 2018.  Nalunga is the sole signor on the account. Joseph Prince is the beneficiary on the account.

102.    The sole source of funds to Nalunga AF account #1438 were deposits totaling $50,000 from Advantage Bellco account #2910.  On January 24, 2018, the account was funded with a $25,000 check from Advantage Bellco account #2910.  On March 22, 2018, the account was funded with a $25,000 check from Advantage Bellco account #2910.

103.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Nalunga AF account #1438 and seized $42,351.34.

### i.    Defendant $55,889.35 seized from Scholar's Choice Plan #5287

104.    On or about December 27, 2018, a Scholar's Choice 529 plan was opened in the name of Elisha Prince.  The account was funded with $28,000.00 from defendant Prince JPMC account #9809.  In March 2018, an additional transfer in the amount of $28,000.00 was deposited from Prince JPMC account #9809.  There are no additional sources of funds for the account.

105.    On July 2, 2018, law enforcement executed a seizure warrant for the funds held in Scholar's Choice Plan #5287 and seized $55,889.35.

### j.    Defendant $55,715.15 seized from Scholar's Choice Plan #5286.

106.    On or about December 27, 2018, a Scholar's Choice 529 plan was opened in the name of Elijah Prince.  The account was funded with $28,000.00 from defendant Prince JPMC account #9809.  In March 2018, an additional transfer in the amount of

$28,000.00 was deposited from Prince JPMC account #9809.  There are no additional sources of funds for the account.

107.    On July 2, 2018, law enforcement executed a seizure warrant for the funds held in Scholar's Choice Plan #5286 and seized $55,715.15.

### k.    Defendant $45,387.81 seized from Allianz Life Insurance Company account #9790

108.    On January 22, 2018, Joseph Prince opened a non-qualified annuity with Allianz Life Insurance Company with check #2610 issued from Prince JPMC account #9809 in the amount of $50,000.00.

109.    On July 2, 2018, law enforcement executed a seizure warrant for the funds held in Allianz account #9790 and seized $45,387.81.

### l.    Defendant $45,602.18 seized from Allianz Life Insurance Company account #2172

110.    On January 24, 2018, Flavia Prince opened a non-qualified annuity with Allianz Life Insurance Company with check #2611 issued from defendant Prince JPMC account #9809 in the amount of $50,000.00.

111.    On July 2, 2018, law enforcement executed a seizure warrant for the funds held in Allianz account #2172 and seized $45,602.18.

### *Accounts Related to Joseph Prince*

### m.    Defendant $2,110.72 seized from Crosswalk Academy Bank Account #1088

112.    Joseph Prince opened Academy business checking account #9200701088 (Crosswalk Academy account #1088) in the name of Crosswalk

Consulting, LLC on November 11, 2017.  Joseph Prince is the sole signor on the account.

113.    Crosswalk Consulting, LLC (Crosswalk) is a Colorado limited liability corporation incorporated on November 6, 2017.  The registered agent is Joseph Prince.

114.    From December 5, 2017 to March 5, 2018, the significant sources of funds to Crosswalk Academy account #1088 were transfers and deposits from Legacy account #1094 (identified below) ($279,444), and deposits from Gracewood (identified below) ($10,417), totaling approximately $289,861.

115.    Additionally, account transfers and wires, totaling $104,800, were sent from Crosswalk Academy account #1088 to the following individuals and businesses: Joseph Prince $70,000; Peter Prince $13,000; Timothy St Cyr $12,000; and Ghazi Marketing $9,800.  Wires payable to St Cyr and Ghazi Marketing were deposited to bank accounts in Trinidad and Tobago.

116.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Crosswalk Academy account #1088 and seized $2,110.72.

**n.    Defendant $2,467.83 seized from Crosswalk Academy Bank Account #7245**

117.    Joseph Prince opened Academy business savings account #9300587245 (Crosswalk Academy account #7245) in the name of Crosswalk Consulting, LLC on November 6, 2017. Joseph Prince is the sole signor on the account.

118.    The only source of funds to Crosswalk Academy account #7245 were received from Crosswalk Academy account #1088, totaling $29,000.00, on December 6, 2017.

119.    From December 6, 2017 to March 25, 2018, the only significant uses of funds in Crosswalk Academy account #7245 were a $10,000 check payable to Joseph Prince and a $10,000 check payable to Peter Prince.

120.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in defendant Crosswalk Academy account #7245 and seized $2,467.83.

### o.    Defendant 2011 Toyota Sienna XLE, VIN #5TDYK3DC2BS037859

121.    On March 11, 2016, Joseph Prince purchased the 2011 Toyota Sienna.

122.    From January 18, 2018 to January 26, 2018, six payments were made on the car loan held by Exeter Finance, totaling $16,350.  The payments were made from Crosswalk Academy account #1088.

123.    The 2011 Toyota Sienna is registered to Joseph Prince at 5877 South Duquesne Court, Aurora, Colorado.

### p.    Defendant $263,262.00 seized from Crosswalk JPMC Account #7280

124.    Joseph Prince opened JPMC business checking account #936007280 (Crosswalk JPMC account #7280) in the name of Crosswalk Consulting on January 19, 2018.  Joseph Prince is the sole signor on the account.

125.    From February 2, 2018 to March 9, 2018, Crosswalk JPMC account #7280 received $313,262 in kickback payments.  These payments include kickbacks from Legacy Academy account #1094 of approximately $264,705.00 and Gracewood PSCU account #9100701809 of approximately $48,557.00.

126.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Crosswalk JPMC account #7280 and seized $263,262.00.

**q.     Defendant $88,737.41 seized from Prince Jackson Account #5836**

127.    Joseph Prince opened Jackson National Life Company (Jackson) life insurance policy account #1020955836 (Prince Jackson account #5836) on January 11, 2018. Prince is the sole owner of the account.  Flavia Nalunga is the beneficiary of the account.

128.    On January 25, 2018, Prince funded Prince Jackson account #5836 with personal check #2016 from Advantage Bellco account #2910 in the amount of $50,000.00.

129.    On March 20, 2018, Prince Jackson account #5836 received a deposit from Crosswalk JPMC account #7280 with check #3006 in the amount of $50,000.00.

130.    These deposits were the only source of funds to the policy.

131.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Prince Jackson account #5836 and seized $88,737.41.

**r.     All funds held in JP Morgan Chase account #936007280 in the name of Crosswalk Consulting**

132.    Joseph Prince opened JP Morgan Chase (JPMC) account #936007280 (Crosswalk JPMC account #7280) on January 19, 2018.  Prince is the sole signor on the account.

133.    From January 25, 2018 to June 19, 2018, Crosswalk JPMC account #7280 received $1,236,916 in kickback payments.  These payments include kickbacks from Gracewood GB account #5684 (identified below) of approximately $455,198; Legacy JPMC account #2795 of approximately $441,965; Legacy Academy account #1094 of approximately $285,796; and Gracewood PSCU account #9100701809 (identified below) of approximately $53,956.

134.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Crosswalk JPMC account #7280 and seized $263,262.00.

135.    On June 25, 2018, $263,262.00 was transferred from JPMC account #3636820079 in the name of Crosswalk Consulting (Crosswalk JPMC account #0079) to Crosswalk JPMC account #7280.  The transfer was the result of JPMC automatic anti-overdraft protection.

136.    From April 3, 2018 to June 4, 2018, the only significant source of funds to Crosswalk JPMC account #0079 were 3 online account transfers from Crosswalk JPMC account #7280, totaling $800,000.00.

**s.    All funds held in JPMC account #3636820079 in the name of Crosswalk Consulting**

137.    Joseph Prince opened JPMC account #3636820079 (Crosswalk JPMC account #0079) on January 19, 2018.  Prince is the sole signor on the account.

138.    From April 3, 2018 to June 4, 2018, the only significant source of funds to Crosswalk JPMC account #0079 were 3 online account transfers from Crosswalk JPMC account #7280, totaling $800,000.00.

139.    From April 17, 2018 to August 8, 2018, the most significant use of funds were online transfers to other accounts controlled by Prince, including eight transfers to Crosswalk JPMC account #7280, totaling $556,380 and one transfer to Prince JPMC account #3596.

**t.    All funds held in JPMC account #591953596 in the name of Joseph and Flavia Prince**

140.   Joseph Prince opened JPMC account #591953596 (Prince JPMC account #3596) on May 9, 2014.  On March 19, 2018, Flavia Prince was added as a signor on the account.  Prince and Flavia are the sole signors on the account.

141.   From December 29, 2017 to July 16, 2018, the only significant source of funds to Prince JPMC account #3596 were online account transfers from other accounts controlled by Prince, totaling approximately $41,975.00.  These online account transfers include one transfer from Crosswalk JPMC account #0079, totaling $24,000.00; 17 transfers from Crosswalk JPMC account #9809, totaling $15,750.00; and one transfer from Prince JPMC account #9504, totaling $2,225.00.

**u.     All funds held in JPMC account #634799504 in the name of Joseph and Flavia Prince**

142.   Joseph Prince opened JPMC account #634799504 (Prince JPMC account #9504) on June 27, 2007.  On March 19, 2018, Flavia Prince was added as a signor on the account.  Prince and Flavia are the sole signors on the account.

143.   From July 5, 2018 to August 8, 2018, the only significant source of funds to Prince JPMC account #9504 were three online account transfer from Crosswalk JPMC account #0079, totaling $121,000.00.

144.   From July 9, 2018 to August 31, 2018, significant uses of funds in Prince JPMC account #9504 were home improvements, totaling approximately $43,992.00, and cash withdrawals totaling approximately $25,000.

**v.     Real Property located at 5877 S. Duquesne Court, Aurora, Colorado**

145.   On April 11, 2014, Joseph Prince and Flavia Nalunga purchased real property located at 5877 S. Duquesne Court, Aurora, Colorado for $345,000.00.  At the

time of purchase, Joseph Prince and Flavia Nalunga obtained a mortgage with Veterans United Home Loans for approximately $342,202.00.  On September 26, 2016, the Princes re-financed this mortgage with Pacific Union Financial, LLC for a loan amount of approximately $324,242.00.

146.    From January 4, 2017 to August 1, 2018, Joseph C. Prince and Flavia N. Prince paid the monthly mortgage from JP Morgan Chase account #3596, for a total amount of $38,516.42.  As set forth above, JP Morgan Chase account #3596 had received $41,975.00 in fraudulent proceeds and kickbacks from December 27, 2017 to July 16, 2018.

147.    In addition, Joseph C. Prince and Flavia N. Prince did substantial upgrades and remodeling to the real property located at 5877 S. Duquesne Court, Aurora, Colorado.

148.    Specifically, on March 27, 2018, Advantage Home Health Agency paid $24,326.00 for HVAC equipment from Bellco Credit Union account #2910, which had previously received over $3,719,271.00 in fraud proceeds.

149.    The Princes also recently remodeled their basement.  In July and August 2018, the Princes paid $43,889.22 from JP Morgan Chase account #9504 to BIC construction for their basement.  Prior to the transfers, JP Morgan Chase account #9504 had received approximately $121,000.00 in fraud proceeds.

150.    The Princes also spent another $4,279.09 in home remodeling expenses with funds derived from their scheme.

151.    In total, the Princes have spent approximately $72,494.31 on remodeling the residence located at 5877 S. Duquesne Court, Aurora, Colorado.

**w.    All funds held in Betterment Wealth Builder Account
#268011226640922 in the name of Joseph C. Prince**

152.    Joseph Prince opened Betterment Wealth Builder (Betterment) account

#268011226640922 (Prince Betterment account #0922) on October 14, 2015.  Prince is

the sole signor on the account.

153.    On May 17, 2018 and June 6, 2018, Prince funded Prince Betterment

account #0922 with transfers in the amount of $5,000 and $8,000 respectively from

Crosswalk JPMC account #7280.

154.    As stated above, from January 25, 2018 to June 19, 2018, the only

significant source of funds to Crosswalk JPMC account #7280 were kickback payments

of approximately $1,236,916.

155.    As of October 8, 2018, the balance in Prince Betterment account #0922

was in the amount of $12,845.38.

### *Genesis Home Health Agency, LLC*

**x.    Defendant $25,714.83 seized from Bellco Credit Union Bank Account
#598869741 in the name of Genesis Home Health Agency**

156.    Andrew Ssekajja opened Bellco business checking account #598869741

(Genesis Bellco #9741) in the name of Genesis Home Health Agency on April 25, 2017.

Andrew Ssekajja is the sole signor on the account.

157.    From June 21, 2017 to June 14, 2018, the only significant source of funds

to Genesis Bellco account #9741 were deposits from the U.S. Treasury of

approximately $3,182,263.  These U.S. Treasury checks represent reimbursement for

the VA SB health care benefits program.

158.    From April 25, 2017 to June 14, 2018, significant uses of funds in Genesis Bellco account #9741 were payments to the Internal Revenue Service of approximately $855,763; payments to caregivers of approximately $396,868; payments to the Colorado Department of Revenue of approximately $104,807; cash withdrawals of approximately $46,999; and one check payable to Flavia Nalunga of $12,883.  Funds from this account were also transferred to multiple other accounts held by Ssekajja at Bellco Credit Union.

159.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Genesis Bellco #9741 and seized $25,714.83.

**y.    Defendant $347.59 seized from Bellco Credit Union Bank Account #587239989 in the name of Andrew Ssekajja**

160.    Andrew Ssekajja opened Bellco checking account #587239989 (Ssekajja Bellco account #9989) on May 10, 2008.  Andrew Ssekajja is the sole signor on the account.

161.    From July 10, 2017 to June 14, 2018, the only significant source of funds to Ssekajja Bellco account #9989 were account transfers from other bank accounts held by Ssekajja, totaling $4,093,906.  Account transfers to Ssekajja Bellco account #9989 were as follows: Genesis Bellco account #9741 of $1,976,216; Ssekajja Bellco account #588743187 of $1,783,065; Ssekajja Bellco account #58592400 of $225,225; and Genesis Bellco account #59985444 of $109,400.  All of these transfers were comprised of funds that were sourced from the U.S. Treasury for the VA SB health care benefits program.

162.    From July 10, 2017 to June 14, 2018, significant uses of funds from Ssekajja Bellco account #9989 were student loan payments of approximately $113,288; car purchase of approximately $37,330; and cash withdrawals of approximately $11,376.

163.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Ssekajja Bellco account #9989 and seized $347.59.

**z.      Defendant $1,513,635.01 seized from Bellco Credit Union Bank Account #59985444 in the name of Genesis Home Health Agency**

164.    Andrew Ssekajja opened Bellco business savings account #59985444 (Genesis Bellco account #5444) in the name of Genesis Home Health Agency on November 28, 2017.  Andrew Ssekajja is the sole signor on the account.

165.    From November 28, 2017 to June 14, 2018, the only significant source of funds to Genesis Bellco account #5444 were account transfers from Genesis Bellco account #9741 ($822,971) and Ssekajja Bellco account #9989 ($1,776,064), totaling approximately $2,599,035.

166.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Genesis Bellco account #5444 and seized $1,513,635.01.

**aa.     Defendant $25,934.80 seized from Bellco Credit Union Bank Account #588743187 in the name of Andrew Ssekajja**

167.    Andrew Ssekajja opened Bellco savings account #588743187 (Ssekajja Bellco account #3187) on July 1, 2009.  Andrew Ssekajja is the sole signor on the account.

168.   From July 11, 2017 to June 14, 2018, the only significant source of funds to Ssekajja Bellco account #3187 were account transfers and deposits from other Bellco account held by Ssekajja, totaling $1,817,715.  These account transfers include transfer from Ssekajja Bellco account #9989 ($1,195,025) and Ssekajja Bellco account #58592400 ($613,973), which had received fraud proceeds totaling approximately $1,808,999.

169.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Ssekajja Bellco account #3187 and seized $25,934.80.

### bb.   Defendant 2018 Honda CR-V, VIN #7FARW2H91JE026845

170.   On March 30, 2018, Andrew Ssekajja purchase a 2018 Honda CR-V, VIN #7FARW2H91JE026845.  According to sales documents, the vehicle was purchased in the amount of approximately $34,554 with a cashier's check issued by Bellco Credit Union purchased from Ssekajja Bellco account #9989.

171.   As stated above, prior to the purchase of defendant 2018 Honda CR-V, Ssekajja Bellco account #9989 had received $4,017,546 in funds from the U.S. Treasury for the Spina Bifida Program.

### Legacy Home Health Care, LLC

### cc.   Defendant $573,887.35 seized from JP Morgan Chase Bank account #281852795

### dd.   Defendant $331,298.08 seized from JP Morgan Chase Bank account #3663323286

172.   On May 3, 2018, Roland Vaughn opened JP Morgan Chase checking account #281852795 (Legacy JPMC account #2795) and corresponding JP Morgan Chase savings account #3663323286 (Legacy JPMC account #3286) in the name of

Legacy Home Health Care.  Roland Vaughn is the sole signer on both accounts for Legacy Home Health Care LLC.

173.    Beginning May 3, 2018, Vaughn began wiring funds from Academy Bank account #1094 to Legacy JPMC account #2795.

174.    Between May 3, 2018 and May 18, 2018, Vaughn wired approximately $798,768.65 from Academy Bank account #1094 to Legacy JPMC Account #2795.

175.    Prior to these transfers from Academy Bank #1094 to Legacy JPMC account #2795, the only significant source of funds to Legacy Academy account #1094 were deposits from the U.S. Treasury, totaling approximately $1,589,779.00.  These U.S. Treasury checks represent reimbursement for the VA SB health care benefits program.

176.    Legacy JPMC account #2795 has also been receiving regular payments identified as being issued by U.S. Treasury.

177.    Since May 3, 2018, Vaughn has transferred funds freely between Legacy JPMC account #2795 and Legacy JPMC account #3286.

178.    On June 22, 2018, law enforcement seized $573,887.35 from Legacy JPMC account #2795.

179.    On June 22, 2018, law enforcement seized $331,298.08 from Legacy JPMC account #3286.

### ee.    Defendant 2015 Cadillac XTS, VIN # 2G61L5S37F9244682

180.    On May 19, 2018, Roland Vaughn purchased defendant 2015 Cadillac XTS, VIN #2G61L5S37F9244682 in the amount of $16,200.00.  According to the State of Florida Registration and Title History records, there is no lien on the vehicle.

181.   The vehicle is registered to Roland Vaughn's residence at 1340 Gulf Boulevard, Apartment 3D, Clearwater Beach, Florida, 33767.  The signature card from Academy Bank states that Roland Vaughn is the "Owner/President of Legacy Home Health, LLC."

182.   Based on a review of bank records and wage history, Roland Vaughn appears to have no other current source of income besides his position at Legacy Home Health LLC.

### ff.   Defendant 2003 Chevrolet Corvette, VIN #1G1YY32G435115773

183.   On December 12, 2017, Roland Vaughn purchased a 2003 Chevrolet Corvette, VIN #1G1YY32G435115773 in Florida.  The vehicle was purchased in the amount $26,037.87 paid with check #203 from Legacy Academy account #1094, which had received approximately $1,589,779.00 in fraud proceeds.

### *Regional Home Health Care Systems, LLC*

### gg.   Defendant $206,575.57 seized from Bank of America Bank Account #334055019012 in the name of Regional Home Health Care Systems, LLC

184.   Marcelline McCrea opened Bank of America (BOA) business checking account #334055019012 (Regional BOA account #9012) in the name of Regional Home Health Care Systems, LLC on September 6, 2017.  Marcelline McCrea is the sole signor on the account.

185.   From October 10, 2017 to June 29,2018, the only significant source of funds to Regional BOA account #9012 received deposits from the U.S. Treasury of

approximately $5,800,423.  These U.S. Treasury checks represent reimbursement for the VA SB health care benefits program.

186.   From October 10, 2017 to June 29, 2018, significant uses of funds from Regional BOA account #9012 include payments to caregivers of approximately $631,807; purchase of and upgrades to residence at 445 Kendrick Terrace SW, Atlanta, GA of approximately $429,947; payments for federal and state taxes of approximately $412,500; Haverty's and Rooms to Go, totaling approximately $117,315; car loan payments and car purchases of approximately $113,537; Clayton Homes $99,227; home improvements of approximately $42,447; Sono Bello Plastic Surgery Center of $19,800; cash withdrawals of $8,760; and one of $3,930 check payable to Venture Homes for the benefit of Joseph and Flavia Prince.

187.   Additionally, account transfers and wires, totaling $509,709 were sent from Regional BOA account #9012 to the following individuals and businesses: Khandice McCrea-Smith ($316,117); Peter A. Prince ($42,300); Ronnie Stripling ($71,257); Great ExpecTastings Catering ($26,000); Ghazi Marketing ($5,000); Dwayne Nunez ($4,675); Lisa Bissoon ($41,933); Chris Michaels ($1,427) and Khadijah McCrea ($1,000).

188.   Khandice McCrea-Smith and Khadijah McCrea are Marcelline McCrea's daughters.  Peter A. Prince is Joseph Prince's brother and Marcelline McCrea's half-brother.

189.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Regional BOA account #9012 and seized $206,575.57.

**hh.    Defendant $1,491,204.76 seized from Bank of America Bank Account #224056082506 in the name of Regional Home Health Care Systems, LLC**

190.    Marcelline McCrea opened BOA business savings account #224056082506 (Regional BOA account #2506) in the name of Regional Home Health Care Systems, LLC January 24, 2018.  Marcelline McCrea is the sole signor on the account.

191.    From January 25, 2018 to June 11, 2018, the only significant source of funds to Regional BOA account #2506 were account transfers from Regional BOA account #9012 of approximately $2,916,000.

192.    From January 25, 2018 to June 11, 2018, the only significant use of funds from Regional BOA account #2506 were the purchase of a house at 4236 Pepperdine Drive, Decatur, GA 30034 of approximately $73,975; purchase of a 2017 BMW 330i from BMW of South Atlanta for approximately $54,370; and purchase of a 2007 Transcraft Corp Flatbed Trailer from Triton Trucks and Equipment, for approximately $18,749.

193.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Regional BOA account #2506 and seized $1,491,204.76.

**ii.    Defendant $69,539.19 seized from Bank of America Bank Account #334055767354 in the name of Regional Home Health Care Systems, LLC**

194.    Marcelline McCrea opened BOA business checking account #334055767354 (Regional BOA account #7354) in the name of Regional Home Health Care Systems, LLC December 13, 2017.  Marcelline McCrea is the sole signor on the account.

195.    From December 13, 2017 to May 31, 2018, the only significant source of funds to Regional BOA account #7354 were account transfers from Regional BOA account #9012 ($588,617) and BOA account #2506 ($30,000), totaling approximately $618,617.

196.    From December 13, 2017 to May 31, 2018, significant uses of funds from Regional BOA account #7354 were payments to VA caregivers of approximately $527,356; payments to Lisa Bissoon of $9,000; and payments to Khadijah McCrea of approximately $6,940.  Payments to Lisa Bissoon were deposited to a bank in Trinidad and Tobago.

197.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Regional BOA account #7354 and seized $69,539.19.

### jj.    Defendant Regional Home Healthcare East, LLC BOA Account #334056613532

198.    Marcelline McCrea opened Bank of America (BOA) Accounts #334056613532 (Regional East BOA account #3532) on March 28, 2018, in the name of Regional Home Healthcare Systems East, LLC.  McCrea and Joseph C. Prince are the signors on the accounts.

199.    On June 18, 2018, the only source of funds to Regional East BOA account #3532 was transfer from Regional BOA account #9012 of $218,592.  At the time of the transfer, the only significant source of funds to Regional BOA account #9012 were deposits received from the US Treasury, totaling approximately $5,540,090.  These US Treasury checks represent reimbursement for the Veteran's Affair Spina Bifida program.

200.    As of June 30, 2018, balance in Regional East BOA account #3532 was $218,694.34.

### kk.   Defendant Regional Home Healthcare East, LLC BOA Account #334047935713

201.   Marcelline McCrea opened Bank of America (BOA) Accounts #334047935713 (Regional East BOA account #5713) on March 28, 2018, in the name of Regional Home Healthcare Systems East, LLC.  McCrea and Joseph C. Prince are the signors on the account.

202.   From March 28, 2018 to June 19, 2018, the only source of funds to Regional East BOA account #5705 were transfers from other Regional and Regional East accounts, totaling approximately $368,140.  On June 5, 2018, Regional account #9012 transferred approximately $271,040 to Regional East account #5713.  From May 23, 2018 to May 31, 2018, Regional East account #5705 transferred approximately $97,100 to Regional East account #5713.  At the time of the transfer, the only significant source of funds to Regional BOA account #9012 were deposits received from the US Treasury, totaling approximately $5,166,003.   These US Treasury checks represent reimbursement for the Veteran's Affair Spina Bifida program.

203.   As of June 30, 2018, the balance in Regional East account #5713 was $180,108.96.

### ll.   Defendant Regional Home Healthcare East, LLC BOA Account #334047935705

204.   Marcelline McCrea opened Bank of America (BOA) Accounts #334047935705 (Regional East BOA account #5705) on March 28, 2018, in the name of Regional Home Healthcare Systems East, LLC.  McCrea and Joseph C. Prince are the signors on the account.

205.   From March 28, 2018 to June 19, 2018, the only source of funds to Regional East BOA account #5705 were transfers from other Regional and Regional

East accounts, totaling $127,100.  On May 22, 2018, Regional account #2506 transferred approximately $107,000 to Regional East account #5705.  From March 28, 2018 to June 19, 2018, Regional East account #5713 transferred approximately $20,100 to Regional East account #5705.   At the time of the transfers, the only source of funds to Regional BOA account #2506 were transfers from Regional BOA account #9012.  The only significant source of funds to Regional BOA account #9012 were deposits from deposits received from the US Treasury, totaling approximately $4,470,832.  These US Treasury checks represent reimbursement for the Veteran's Affair Spina Bifida program.

206.    As of June 30, 2018, the balance in Regional East account #5705 was $29,800.00.

**mm.    Defendant $49,606.76 seized from Betterment Brokerage Account #268011234824534 in the name of Marcelline McCrea held at Apex Clearing**

207.    On June 20, 2018, Marcelline McCrea opened and funded the Betterment brokerage account #268011234824534 (defendant Betterment brokerage account #4534) with a transfer in the amount of $50,000.00 from Bank of America account #9012.

208.    As stated above, prior to June 20, 2018, the only significant source of funds to Regional BOA account #9012 received deposits from the U.S. Treasury of approximately $3,287,264.00.  These U.S. Treasury checks represent reimbursement for the VA SB health care benefits program.

209.    On July 2, 2018, law enforcement executed a seizure warrant for the funds held in defendant Betterment brokerage account #4534 and seized $49,606.76.

### nn.    Defendant 445 Kendrick Terrace SW, Atlanta, Georgia

210.    On April 20, 2018, Marcelline and Ronnie Stripling sent a wire transfer in the amount of $414,874.68 from Regional BOA account #9012 to BB&T Bank Account in the name of McMichael and Gray.  These monies were used to purchase defendant 445 Kendrick Terrace, Atlanta, Georgia, 30331.

211.    Prior to the purchase of defendant 445 Kendrick Terrace, Atlanta, Georgia, 30331, Regional BOA account #9012 had received deposits from the U.S. Treasury of approximately $3,287,264.00, which represent reimbursement for the VA SB health care benefits program.

### oo.    Defendant $919.18 seized from Bank of America Account #898086427686 in the name of Khandice McCrea

212.    Khandice McCrea opened BOA checking account #898086427686 (McCrea BOA account #7686) on January 17, 2017.  Khandice is the sole signor on the account.  Khandice lists her occupation as accountant at Regional Home Health Agency.

213.    From October 19, 2017 to June 12, 2018, the only significant source of funds to Khandice BOA account #7686 were account transfers and other deposits from Regional Health Home Agency BOA accounts, totaling approximately $375,845.  These deposits include account transfers and payroll credits from Regional BOA account #9012 of approximately $317,347.

214.    From October 19, 2017 to June 12, 2018, significant uses of funds from Khandice BOA account #7686 include the purchase of 7207 Demeter Drive of approximately $252,350 (see below); Haverty's $27,753; The Goddard School $19,539; Disney Resorts $13,596; and Sono Bello Plastic Surgery Center of $10,800.

215.    On June 22, 2018, law enforcement seized $919.18 from McCrea BOA #7686.

**pp.    Defendant 7207 Demeter Drive, Atlanta, Georgia**

216.    Khandice McCrea, daughter of Marcelline and Ronnie Stripling, opened Bank of America Bank Account 898086427686 (McCrea BOA account #7686) on January 1, 2017. She has her employment listed as Accountant for Regional Home Health Care Systems. From January 1, 2017 to April 28, 2018, the only significant source of funds to McCrea BOA Account #7986 were payments from Regional Home Healthcare totaling approximately $316,780.

217.    On November 8, 2017, Khandice McCrea received a wire transfer in the amount of $247,109.75 into McCrea BOA Account #7686 from Regional BOA account #9012.

218.     On November 9, 2017, Khandice McCrea wire transferred $248,350.00 from McCrea BOA Account #7686 to O'Kelley and Sorohan, Attorneys at Law.

219.    On November 10, 2017, Khandice McCrea purchased a residence at 7207 Demeter Drive, Atlanta, Georgia 30349.

**qq.    Defendant 2016 Nissan Rogue, VIN #5N1AT2MV9GC737702.**

220.    On February 8, 2018, defendant 2016 Nissan Rogue was purchased via $19,625.50 via debit card transaction from Regional BOA account #9012, which has received approximately $3,287,264.00 in fraud proceeds as described above. Payment was made to AutoNation Nissan, 811 Thornton Rd, Lithia Springs, Georgia.

221.   On June 28, 2018, law enforcement seized defendant 2016 Nissan Rogue.   Defendant 2016 Nissan Rogue was seized from Susan Stripling.

### rr.   Defendant 2017 BMW 330i, VIN #WBA8B9G36HNU56551

222.   On March 16, 2018, Marcelline Stripling and co-owner Khadijah Jewel McCrea purchased a 2017 BMW 330i, VIN #WBA8B9G36HNU56551 via BOA cashier's check in the amount of $54,369.91.   The funds used to purchase the cashier's check were from Regional BOA account #2506.  According to the Georgia Department of Motor Vehicle Title History records, there is no lien on the vehicle.

223.   The vehicle is registered at the residence of Khadijah McCrea, at 1321 Lovvorn Road, Carrollton, Georgia 30117.

224.   ADP Payroll records show Khadijah McCrea receives a biweekly paycheck in the approximate amount of $1,592.80.  Based on a review of bank records and wage history, Khadijah MCrea appears to have no other source of income other than a paycheck from Regional Home Health Care Systems and large disbursements from Regional Home Health Care Systems.

### ss.   Defendant 2014 Ford F150, VIN # 1FTFW1CF7EKD13069

225.   On April 14, 2018, Ronnie and Marcelline Stripling purchased a 2014 Ford F150, VIN #1FTFW1CF7EKD13069 via BOA cashier's check in the amount of $33,935. The funds used to purchase the cashier's check were from Regional BOA account #9012.  According to the Georgia Department of Motor Vehicle Title History records, there is no lien on the vehicle. The vehicle is registered to the residence of Marcelline and Ronnie Stripling, at 445 Kendrick, Atlanta, Georgia, 30331.

226.    Based on a review of bank records and wage history, Marcelline and Ronnie Stripling appear to have no other current source of income other than Regional Home Health Care Systems, LLC.

**tt.    Defendant $7,770.76 seized from Regions Bank account #0246222464 in the name of Ronnie Stripling**

227.    Ronnie Stripling opened Regions Bank account #024622464 (Stripling Regions account #2464) on February 27, 2017.  Ronnie is the sole signor on the account.

228.    From October 27, 2017 to June 25, 2018, Stripling Regions account #2464 received 2 wires from Regional North BOA account #5727, totaling $700,000, and 17 wire transfers from Regional BOA account #9012, totaling approximately $68,256.

229.    On June 25, 2018, Stripling Regions account #2464 transferred $695,774 to RAMS Regional account #0609.

230.    On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Stripling Regions account #2464 and seized $7,770.76.

**uu.    Defendant $116,259.31 seized from Regional Home Healthcare North, LLC BOA Account #334056385560**

**vv.    Defendant $99,853.91 Regional Home Healthcare North, LLC BOA Account #334056385727**

**ww.    Defendant $33,446.88 Regional Home Healthcare North, LLC BOA Account #334056385644**

231.    Marcelline McCrea opened Bank of America (BOA) Accounts #334056385560 (Regional North BOA account #5560), #334056385727 (Regional North BOA account #5727), and #334056385644 (Regional North BOA account #5644)

on March 1, 2018, in the name of Regional Home Healthcare Systems North, LLC.  McCrea and Peter A. Prince are the signors on the accounts.

232.    From March 1, 2018 to June 26, 2018, deposits totaling approximately $1,391,456 from the US Treasury were made to Regional North BOA Account #5560.  These deposits are the only significant source of funds to the account.

233.    Between March 1, 2018 and June 25, 2018, funds were transferred freely between Regional BOA Account #5560, Regional BOA Account #5727, and Regional BOA Account #5644.  These transfers were the only source of funds in Regional BOA Account #5727 and Regional BOA Account #5644.

234.    On June 29, 2018, law enforcement executed a seizure warrant for the funds held in defendant Regional BOA Account #5560 and seized $116,259.31.

235.    On June 29, 2018, law enforcement executed a seizure warrant for the funds held in defendant Regional BOA Account #5727 and seized $99,853.91.

236.    On June 29, 2018, law enforcement executed a seizure warrant for the funds held in defendant Regional BOA Account #5644 and seized $33,446.88.

### xx.    Defendant $695,774.00 RAMS and Associates LLC Regions Bank Account #0609

237.    On June 25, 2018, Regions Bank Account #0609 (RAMS Regions Bank Account #0609) was opened by Marcelline McCrea and Ronnie Stripling in the name of RAMS and Associates, LLC.  McCrea and Stripling are the signors on the account.

238.    On June 25, 2018, two wires, totaling $700,000.00, were executed from Regional BOA Account #5727 to Stripling Regions Account #2464.  On June 26, 2018, an account transfer in the amount of approximately $695,774 was made from Stripling

Regions Account #2464 to RAMS Regions Bank Account #0609.   This deposit is the only source of funds to RAMS Regions Bank Account #0609.

239.    On June 29, 2018, law enforcement executed a seizure warrant for the funds held in RAMS Regions Bank Account #0609 and seized $695,774.00.

### yy.    Defendant 4236 Pepperdine Drive, Decatur, Georgia

240.    On May 4, 2018, Inter-coastal Land Acquisition and Development, LLC (ICLAD) purchased real property located at 4236 Pepperdine Drive, Decatur, Georgia. ICLAD is a Colorado Limited Liability Company formed on February 21, 2018 by registered agent, Joseph C. Prince.    Articles of Organization listed the following ownership structure for ICLAD: Peter A. Prince, President/CEO, 33 1/3% ownership; Joseph C. Prince, Vice President/Director of Operations, 33 1/3% ownership; and Marcelline S. Stripling, Treasurer/Director of Finance, 33 1/3% ownership.

241.    On May 4, 2018, Marcelline and Ronnie Stripling sent a wire transfer in the amount of $73,976 from Regional BOA account #2506 to BB&T Bank Account in the name of The Callaway Law Group.  Notes on the wire transfer were "Other 4236 Pepperdine Drive Decatur// GA 30034.

242.    Prior to the purchase of defendant 4236 Pepperdine Drive, Regional BOA account #2506 had received deposits from Regional BOA account #9012 of approximately $1,566,000.  Prior to the purchase of the real property, Regional BOA account #9012 received deposited from the U.S. Treasury of approximately $2,017,707.00, which represent reimbursement for the VA SB health care benefits program.

### zz.    Defendant 2007 Transcraft Corp Flatbed Trailer

243.   On June 11, 2018, Ronnie and Marcelline Stripling purchased a 2007 Transcraft Corp Aluminum Flatbed 53'x102", VIN #1TTE4820871082302, via BOA cashier's check in the amount of $18,748.50.  The funds used to purchase the cashier's check were from Regional BOA account #2506.  The trailer is registered to Ronnie Stripling at his residence, at 445 Kendrick, Atlanta, Georgia, 30331.

244.   Prior to the purchase of the trailer, Regional BOA account #2506 received transfers of $2,916,000 from Regional BOA account #9012.  At that time, the only significant source of funds to Regional BOA account #9012 deposits of approximately $5,166,003.

**Gracewood Home Health Agency LLC**

> **aaa.   Defendant $259.51 seized from Gracewood Public Service Credit Union account 9100701809**

245.   Glenn Beach and Catherine Beach opened Gracewood Public Service Credit Union (PSCU) Account #9100701809 (Gracewood PSCU account #91-1809) in the name of Gracewood Home Health Agency, LLC on November 16, 2017.  Glenn and Catherine Beach are the sole signors on the account.

246.   From December 22, 2017 to February 1, 2018, Gracewood PSCU account #91-1809 received deposits from the US Treasury, totaling approximately $177,216.00.  These US Treasury checks represent reimbursement for the Veteran's Affair Spina Bifida program.

247.   From December 26, 2018 to June 30, 2018, significant uses on funds from Gracewood PSCU account #91-1809 were $64,374 in payments to Crosswalk Consulting; transfers to Glenn Beach PSCU account #0100276529 of approximately

$44,056; payments to caregivers of approximately $34,164; and transfers to Gracewood PSCU account #90-1809 of approximately $28,594.

248.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Gracewood PSCU account #91-1809 and seized $259.51.

**bbb. Defendant $2,293.61 seized from Gracewood Public Service Credit Union account 9000701809**

249.   Glenn Beach and Catherine Beach opened Gracewood PSCU Account #9000701809 (Gracewood PSCU #90-1809) in the name of Gracewood Home Health Agency, LLC on November 16, 2017.  Glenn and Catherine Beach are the sole signors on the account.

250.   From December 28, 2017 to June 9, 2018, the only source of funds to Gracewood PSCU account #90-1809 were account transfers from Gracewood PSCU account #9100701809, totaling approximately $28,594.

251.   From April 20, 2018 to May 21, 2018, the only significant use of funds were account transfers to Glenn Beach PSCU account #0100276529, totaling approximately $25,000.

252.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Gracewood PSCU #90-1809 and seized $2,293.61.

**ccc. Defendant $123,563.08 seized from Gracewood Guaranty Bank account 4000825684**

253.   Glenn Beach and Catherine Beach opened Guaranty Bank (GB) Account #4000825684 (Gracewood GB Account #5684) in the name of Gracewood Home Health Agency, LLC on January 23, 2018.  Glenn and Catherine Beach are the sole signors on the account.

254.   From February 14, 2018 to June 19, 2018, the only significant source of funds to Gracewood GB account #5684 were deposits from the US Treasury, totaling approximately $1,264,880. These US Treasury checks represent reimbursement for the VA SB health care benefits program.

255.   From February 14, 2018 to June 18, 2018, significant uses of funds from Gracewood GB account #5684 were account transfers to accounts held by Joseph Prince totaling approximately $455,198; transfers to Glenn Beach GB account #4000825668 totaling approximately $271,629; and transfers to Gracewood GB account #4000824577 totaling approximately $184,629.

256.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Gracewood GB Account #5684 and seized $123,563.08.

### ddd.   Defendant $189,862.19 seized from Gracewood Guaranty Bank account 4000824577

257.   Glenn Beach and Catherine Beach opened the business checking account, GB Account #4000824577 LLC (Gracewood GB account #4577), in the name of Gracewood Home Health Agency, LLC on February 16, 2018.  Glenn and Catherine Beach are the sole signors on the account.

258.   From February 20, 2018 to June 18, 2018, the only sources of funds to Gracewood GB account #4577 were account transfers and deposits from Gracewood GB account #5684 and Beach GB account #5668, totaling approximately $184,629 and $5,233, respectively.

259.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Gracewood GB account #4577 and seized $189,862.19.

**eee.   Defendant $99,931.11 seized from Beach Guaranty Bank account 4000825668**

260.   Glenn Beach and Catherine Beach opened GB Account 4000825668 (Beach GB account #5668) on January 23, 2018.  Glenn and Catherine Beach are the sole signors on the account.

261.   From January 25, 2018 to May 30 2018, the only source of funds to Gracewood GB account #5668 were account transfers and deposits from Gracewood GB account #5684, totaling approximately $226,729.

262.   From January 23, 2018 to May 30, 2018, significant uses of funds from Gracewood GB account #5668 were payments to Catherine and Glenn Beach PSCU line of credit account #0000276529-01, totaling approximately $112,526; payments on car loans totaling approximately $14,290; home improvements of $11,800; transfer to Beach Betterment account #6345 of $6,500; and transfers to Gracewood GB account #4577 of approximately $5,233.

263.   On June 22, 2018, law enforcement executed a seizure warrant for the funds held in Beach GB account #5668 and seized $99,931.11.

**fff.   Defendant $6,392.44 seized from Glenn Beach Betterment account 268011234296345**

264.   The source of funds to Glenn Beach Betterment Account 268011234296345 (Beach Betterment account #6345) was an account transfer from Glenn Beach GB account #5668 of $6,500, deposited to the account on approximately April 17, 2018.

265.   On July 2, 2018, law enforcement executed a seizure warrant for the funds held in Beach Betterment account #6345 and seized $6,392.44.

**Peter Prince**

> **ggg. Defendant $4,627.11 seized from Peter Prince USAA account 202360792**

266.   Peter Prince opened USAA Bank Account 202360792 (Peter USAA account #0792) on March 30, 2016. Peter is the sole signor on the account.

267.   From October 24, 2017 to May 9, 2018, Peter USAA account #0792 received deposits from Regional BOA account #9012 of $40,000; Regional BOA account #5560 of $28,000; Crosswalk Academy account #1088 of $13,000; and Crosswalk Academy account #7245 of $10,000.   Total deposits from subject accounts were approximately $91,000.

268.   On June 23, 2018, law enforcement executed a seizure warrant for the funds held in Peter USAA account #0792 and seized $4,627.11.

VERIFICATION OF KRISTEN VAREL

SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION

I, Special Agent, Kristen Varel, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

Kristen Varel
Special Agent – FBI

STATE OF COLORADO          )
                                                 )ss
COUNTY OF ARAPAHOE        )

The foregoing was acknowledged before me this 13th day of December 2018 by Kristen Varel, Special Agent, Federal Bureau of Investigation.

KRISTINA L KELPIS
Notary Public
State of Colorado
Notary ID # 20174007486
My Commission Expires 02-17-2021

Notary Public — Colorado
My Commission Expires:

## FIRST CLAIM FOR RELIEF

233.    The Plaintiff repeats and incorporates by reference the paragraphs above.

234.    By the foregoing and other acts, defendant $68,145.34 Held in Bellco Credit Union Bank account #599362910, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SECOND CLAIM FOR RELIEF

235.    The Plaintiff repeats and incorporates by reference the paragraphs above.

236.    By the foregoing and other acts, defendant $68,145.34 Held in Bellco Credit Union Bank account #599362910, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRD CLAIM FOR RELIEF

237.    The Plaintiff repeats and incorporates by reference the paragraphs above

238.    By the foregoing and other acts, $1,285,623.35 held in Bellco Credit Union Bank account #599517901, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FOURTH CLAIM FOR RELIEF

239.    The Plaintiff repeats and incorporates by reference the paragraphs above.

240.    By the foregoing and other acts, $1,285,623.35 held in Bellco Credit Union Bank account #599517901, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States

pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTH CLAIM FOR RELIEF

241.    The Plaintiff repeats and incorporates by reference the paragraphs above.

242.    By the foregoing and other acts, defendant $10,008.31 held in Bellco Credit Union Bank account #599965977, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SIXTH CLAIM FOR RELIEF

243.    The Plaintiff repeats and incorporates by reference the paragraphs above.

244.    By the foregoing and other acts, defendant $10,008.31 held in Bellco Credit Union Bank account #599965977, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTH CLAIM FOR RELIEF

245.    The Plaintiff repeats and incorporates by reference the paragraphs above.

246.    By the foregoing and other acts, defendant $10,008.30 held in Bellco Credit Union Bank account #599965928, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTH CLAIM FOR RELIEF

247.    The Plaintiff repeats and incorporates by reference the paragraphs above.

248.    By the foregoing and other acts, defendant $10,008.30 held in Bellco Credit Union Bank account #599965928, constitutes property involved in money laundering in

violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### NINTH CLAIM FOR RELIEF

249.    The Plaintiff repeats and incorporates by reference the paragraphs above.

250.    By the foregoing and other acts, defendant $210,064.42 held in Chase Bank account #635479809, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### TENTH CLAIM FOR RELIEF

251.    The Plaintiff repeats and incorporates by reference the paragraphs above.

252.    By the foregoing and other acts, defendant $210,064.42 held in Chase Bank account #635479809, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### ELEVENTH CLAIM FOR RELIEF

253.    The Plaintiff repeats and incorporates by reference the paragraphs above.

254.    By the foregoing and other acts, defendant $45,144.07 held in Jackson National Life Insurance account #1020952900, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### TWELFTH CLAIM FOR RELIEF

255.    The Plaintiff repeats and incorporates by reference the paragraphs above.

256.    By the foregoing and other acts, defendant $45,144.07 held in Jackson

National Life Insurance account #1020952900, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRTEENTH CLAIM FOR RELIEF

257.   The Plaintiff repeats and incorporates by reference the paragraphs above.

258.   By the foregoing and other acts, defendant $45,279.02 held in Jackson National Life Insurance account #1020964665, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### FOURTEENTH CLAIM FOR RELIEF

259.   The Plaintiff repeats and incorporates by reference the paragraphs above.

260.   By the foregoing and other acts, defendant $45,279.02 held in Jackson National Life Insurance account #1020964665, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### FIFTEENTH CLAIM FOR RELIEF

261.   The Plaintiff repeats and incorporates by reference the paragraphs above.

262.   By the foregoing and other acts, defendant $42,351.34 held in American Funds Bank account #4000751438, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### SIXTEENTH CLAIM FOR RELIEF

263.   The Plaintiff repeats and incorporates by reference the paragraphs above.

264.    By the foregoing and other acts, defendant $42,351.34 held in American Funds Bank account #4000751438, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTEENTH CLAIM FOR RELIEF

265.    The Plaintiff repeats and incorporates by reference the paragraphs above.

266.    By the foregoing and other acts, defendant $55,889.35 held in Legg Mason Bank account #5000135287, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTEENTH CLAIM FOR RELIEF

267.    The Plaintiff repeats and incorporates by reference the paragraphs above.

268.    By the foregoing and other acts, defendant $55,889.35 held in Legg Mason Bank account #5000135287, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINTEENTH CLAIM FOR RELIEF

269.    The Plaintiff repeats and incorporates by reference the paragraphs above.

270.    By the foregoing and other acts, defendant $55,715.15 held in Legg Mason account #5000135286, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## TWENTIETH CLAIM FOR RELIEF

271.    The Plaintiff repeats and incorporates by reference the paragraphs above.

272.    By the foregoing and other acts, defendant $55,715.15 held in Legg Mason account #5000135286, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTY-FIRST CLAIM FOR RELIEF

273.    The Plaintiff repeats and incorporates by reference the paragraphs above.

274.    By the foregoing and other acts, defendant $45,387.81 Held in Allianz Bank Account #AV001069790, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## TWENTY-SECOND CLAIM FOR RELIEF

275.    The Plaintiff repeats and incorporates by reference the paragraphs above.

276.    By the foregoing and other acts, defendant $45,387.81 Held in Allianz Bank Account #AV001069790, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTY-THIRD CLAIM FOR RELIEF

277.    The Plaintiff repeats and incorporates by reference the paragraphs above.

278.    By the foregoing and other acts, defendant $45,602.18 Held in Allianz Bakn Account #AV001072172, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## TWENTY-FOURTH CLAIM FOR RELIEF

279.    The Plaintiff repeats and incorporates by reference the paragraphs above.

280.    By the foregoing and other acts, defendant $45,602.18 Held in Allianz Bank Account #AV001072172, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTY-FIFTH CLAIM FOR RELIEF

281.    The Plaintiff repeats and incorporates by reference the paragraphs above.

282.    By the foregoing and other acts, defendant $2,110.72 Held in Academy Bank Account #9200701088, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## TWENTY-SIXTH CLAIM FOR RELIEF

283.    The Plaintiff repeats and incorporates by reference the paragraphs above.

284.    By the foregoing and other acts, defendant $2,110.72 Held in Academy Bank Account #9200701088, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTY-SEVENTH CLAIM FOR RELIEF

285.    The Plaintiff repeats and incorporates by reference the paragraphs above.

286.    By the foregoing and other acts, defendant $2,467.83 Held in Academy Bank Account #9300587245, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore,

is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## TWENTY-EIGHTH CLAIM FOR RELIEF

287.   The Plaintiff repeats and incorporates by reference the paragraphs above.

288.   By the foregoing and other acts, defendant $2,467.83 Held in Academy Bank Account #9300587245, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## TWENTY-NINTH CLAIM FOR RELIEF

289.   The Plaintiff repeats and incorporates by reference the paragraphs above.

290.   By the foregoing and other acts, defendant 2011 Toyota Sienna XLE, VIN 5TDYK3DC2BS037859, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## THIRTIETH CLAIM FOR RELIEF

291.   The Plaintiff repeats and incorporates by reference the paragraphs above.

292.   By the foregoing and other acts, defendant 2011 Toyota Sienna XLE, VIN 5TDYK3DC2BS037859, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## THIRTY-FIRST CLAIM FOR RELIEF

293.   The Plaintiff repeats and incorporates by reference the paragraphs above.

294.   By the foregoing and other acts, defendant $263,262.00 Held in Chase Bank Account #936007280, constitutes proceeds derived from or traceable to violations

of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

THIRTY-SECOND CLAIM FOR RELIEF

295.   The Plaintiff repeats and incorporates by reference the paragraphs above.

296.   By the foregoing and other acts, defendant $263,262.00 Held in Chase Bank Account #936007280, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

THIRTY-THIRD CLAIM FOR RELIEF

297.   The Plaintiff repeats and incorporates by reference the paragraphs above.

298.   By the foregoing and other acts, defendant $88,737.41 Held in Jackson National Life IRA Account #1020955836, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

THIRTY-FOURTH CLAIM FOR RELIEF

299.   The Plaintiff repeats and incorporates by reference the paragraphs above.

300.   By the foregoing and other acts, defendant $88,737.41 Held in Jackson National Life IRA Account #1020955836, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

THIRTY-FIFTH CLAIM FOR RELIEF

301.   The Plaintiff repeats and incorporates by reference the paragraphs above.

302.   By the foregoing and other acts, defendant $25,714.83 Held in Bellco Credit

Union Bank Account #598869741, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### THIRTY-SIXTH CLAIM FOR RELIEF

303.   The Plaintiff repeats and incorporates by reference the paragraphs above.

304.   By the foregoing and other acts, defendant $25,714.83 Held in Bellco Credit Union Bank Account #598869741, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRTY-SEVENTH CLAIM FOR RELIEF

305.   The Plaintiff repeats and incorporates by reference the paragraphs above.

306.   By the foregoing and other acts, defendant $347.59 Held in Bellco Credit Union Bank Account #587239989, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

### THIRTY-EIGHTH CLAIM FOR RELIEF

307.   The Plaintiff repeats and incorporates by reference the paragraphs above.

308.   By the foregoing and other acts, defendant $347.59 Held in Bellco Credit Union Bank Account #587239989, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

### THIRTY-NINTH CLAIM FOR RELIEF

309.   The Plaintiff repeats and incorporates by reference the paragraphs above.

310.    By the foregoing and other acts, defendant $1,513,635.01 Held in Bellco Credit Union Bank Account #59985444, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FORTIETH CLAIM FOR RELIEF

311.    The Plaintiff repeats and incorporates by reference the paragraphs above.

312.    By the foregoing and other acts, defendant $1,513,635.01 Held in Bellco Credit Union Bank Account #59985444, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FORTY-FIRST CLAIM FOR RELIEF

313.    The Plaintiff repeats and incorporates by reference the paragraphs above.

314.    By the foregoing and other acts, defendant $25,934.80 Held in Bellco Credit Union Bank Account #588743187, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FORTY-SECOND CLAIM FOR RELIEF

315.    The Plaintiff repeats and incorporates by reference the paragraphs above.

316.    By the foregoing and other acts, defendant $25,934.80 Held in Bellco Credit Union Bank Account #588743187, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FORTY-THIRD CLAIM FOR RELIEF

317.   The Plaintiff repeats and incorporates by reference the paragraphs above.

318.   By the foregoing and other acts, defendant 2018 Honda CR-V, VIN 7FARW2H91JE026845, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FORTY-FOURTH CLAIM FOR RELIEF

319.   The Plaintiff repeats and incorporates by reference the paragraphs above.

320.   By the foregoing and other acts, defendant 2018 Honda CR-V, VIN 7FARW2H91JE026845, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FORTY-FIFTH CLAIM FOR RELIEF

321.   The Plaintiff repeats and incorporates by reference the paragraphs above.

322.   By the foregoing and other acts, defendant $573,887.35 Held in Chase Bank Account #281852795, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FORTY-SIXTH CLAIM FOR RELIEF

323.   The Plaintiff repeats and incorporates by reference the paragraphs above.

324.   By the foregoing and other acts, defendant $573,887.35 Held in Chase Bank Account #281852795, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FORTY-SEVENTH CLAIM FOR RELIEF

325.   The Plaintiff repeats and incorporates by reference the paragraphs above.

326.   By the foregoing and other acts, $331,298.08 Held in Chase Bank Account #3663323286, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FORTY-EIGHTH CLAIM FOR RELIEF

327.   The Plaintiff repeats and incorporates by reference the paragraphs above.

328.   By the foregoing and other acts, $331,298.08 Held in Chase Bank Account #3663323286, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FORTY-NINTH CLAIM FOR RELIEF

329.   The Plaintiff repeats and incorporates by reference the paragraphs above.

330.   By the foregoing and other acts, 2015 Cadillac XTS, VIN 2G61L5S37F9244682, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FIFTIETH CLAIM FOR RELIEF

331.   The Plaintiff repeats and incorporates by reference the paragraphs above.

332.   By the foregoing and other acts, 2015 Cadillac XTS, VIN 2G61L5S37F9244682, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States

pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTY-FIRST CLAIM FOR RELIEF

333.    The Plaintiff repeats and incorporates by reference the paragraphs above.

334.    By the foregoing and other acts, 2003 Chevrolet Corvette, VIN 1G1YY32G435115773, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FIFTY-SECOND CLAIM FOR RELIEF

335.    The Plaintiff repeats and incorporates by reference the paragraphs above.

336.    By the foregoing and other acts, 2003 Chevrolet Corvette, VIN 1G1YY32G435115773, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTY-THIRD CLAIM FOR RELIEF

337.    The Plaintiff repeats and incorporates by reference the paragraphs above.

338.    By the foregoing and other acts, $206,575.57 Held in Bank of America Account #334055019012, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FIFTY-FOURTH CLAIM FOR RELIEF

339.    The Plaintiff repeats and incorporates by reference the paragraphs above.

340.    By the foregoing and other acts, $206,575.57 Held in Bank of America Account #334055019012, constitutes property involved in money laundering in violation

of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTY-FIFTH CLAIM FOR RELIEF

341. The Plaintiff repeats and incorporates by reference the paragraphs above.

342. By the foregoing and other acts, defendant $1,491,204.76 Held in Bank of America Account #224056082506, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FIFTHY-SIXTH CLAIM FOR RELIEF

343. The Plaintiff repeats and incorporates by reference the paragraphs above.

344. By the foregoing and other acts, defendant $1,491,204.76 Held in Bank of America Account #224056082506, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTHY-SEVENTH CLAIM FOR RELIEF

345. The Plaintiff repeats and incorporates by reference the paragraphs above.

346. By the foregoing and other acts, defendant $69,539.19 Held in Bank of America Account #334055767354, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## FIFTY-EIGHTH CLAIM FOR RELIEF

347. The Plaintiff repeats and incorporates by reference the paragraphs above.

348. By the foregoing and other acts, defendant $69,539.19 Held in Bank of

America Account #334055767354, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## FIFTY-NINTH CLAIM FOR RELIEF

349.    The Plaintiff repeats and incorporates by reference the paragraphs above.

350.    By the foregoing and other acts, defendant $49,606.76 Held in Betterment Bank Account #268011234824534, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SIXTIETH CLAIM FOR RELIEF

351.    The Plaintiff repeats and incorporates by reference the paragraphs above.

352.    By the foregoing and other acts, defendant $49,606.76 Held in Betterment Bank Account #268011234824534, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTY-FIRST CLAIM FOR RELIEF

353.    The Plaintiff repeats and incorporates by reference the paragraphs above.

354.    By the foregoing and other acts, defendant 445 Kendrick Terrace SW, Atlanta, GA, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SIXTY-SECOND CLAIM FOR RELIEF

355.    The Plaintiff repeats and incorporates by reference the paragraphs above.

356.   By the foregoing and other acts, defendant 445 Kendrick Terrace SW, Atlanta, GA, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTY-THIRD CLAIM FOR RELIEF

357.   The Plaintiff repeats and incorporates by reference the paragraphs above.

358.   By the foregoing and other acts, defendant $919.18 Held in Bank of America Account #898086427686, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SIXTY-FOURTH CLAIM FOR RELIEF

359.   The Plaintiff repeats and incorporates by reference the paragraphs above.

360.   By the foregoing and other acts, defendant $919.18 Held in Bank of America Account #898086427686, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SIXTY-FIFTH CLAIM FOR RELIEF

361.   The Plaintiff repeats and incorporates by reference the paragraphs above.

362.   By the foregoing and other acts, defendant 7207 Demeter Drive, Atlanta, GA, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SIXTY-SIXTH CLAIM FOR RELIEF

363.    The plaintiff repeats and incorporates by reference the paragraphs above.

364.    By the foregoing and other acts, defendant 7207 Demeter Drive, Atlanta, GA, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

SIXTY-SEVENTH CLAIM FOR RELIEF

365.    The plaintiff repeats and incorporates by reference the paragraphs above.

366.    By the foregoing and other acts, defendant 2016 Nissan Rogue, VIN 5N1AT2MV9GC737702, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

SIXTY-EIGHTH CLAIM FOR RELIEF

367.     The plaintiff repeats and incorporates by reference the paragraphs above.

368.    By the foregoing and other acts, defendant 2016 Nissan Rogue, VIN 5N1AT2MV9GC737702, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

SIXTY-NINTH CLAIM FOR RELIEF

369.    The plaintiff repeats and incorporates by reference the paragraphs above.

370.    By the foregoing and other acts, defendant 2017 BMW 330i, VIN WBA8B9G36HNU56551, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SEVENTIETH CLAIM FOR RELIEF

371.   The plaintiff repeats and incorporates by reference the paragraphs above.

372.   By the foregoing and other acts, defendant 2017 BMW 330i, VIN WBA8B9G36HNU56551, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTY-FIRST CLAIM FOR RELIEF

373.   The plaintiff repeats and incorporates by reference the paragraphs above.

374.   By the foregoing and other acts, defendant 2014 Ford F150, VIN 1FTFW1CF7EKD13069, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SEVENTY-SECOND CLAIM FOR RELIEF

375.   The plaintiff repeats and incorporates by reference the paragraphs above.

376.   By the foregoing and other acts, defendant 2014 Ford F150, VIN 1FTFW1CF7EKD13069, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTY-THIRD CLAIM FOR RELIEF

377.   The plaintiff repeats and incorporates by reference the paragraphs above.

378.   By the foregoing and other acts, defendant $7,770.76 Held in Regions Bank Account #0246222464, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is

forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SEVENTY-FOURTH CLAIM FOR RELIEF

379. The plaintiff repeats and incorporates by reference the paragraphs above.

380. By the foregoing and other acts, defendant $7,770.76 Held in Regions Bank Account #0246222464, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTY-FIFTH CLAIM FOR RELIEF

381. The plaintiff repeats and incorporates by reference the paragraphs above.

382. By the foregoing and other acts, defendant $116,259.31 Held in Bank of America Account #334056385560, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## SEVENTY-SIXTH CLAIM FOR RELIEF

383. The plaintiff repeats and incorporates by reference the paragraphs above.

384. By the foregoing and other acts, defendant $116,259.31 Held in Bank of America Account #334056385560, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SEVENTY-SEVENTH CLAIM FOR RELIEF

385. The plaintiff repeats and incorporates by reference the paragraphs above.

386. By the foregoing and other acts, defendant $99,853.91 Held in Bank of America Account #334056385727, constitutes proceeds derived from or traceable to

violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

SEVENTY-EIGHTH CLAIM FOR RELIEF

387.   The plaintiff repeats and incorporates by reference the paragraphs above.

388.   By the foregoing and other acts, defendant $99,853.91 Held in Bank of America Account #334056385727, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

SEVENTY-NINTH CLAIM FOR RELIEF

389.   The plaintiff repeats and incorporates by reference the paragraphs above.

390.   By the foregoing and other acts, defendant $33,446.88 Held in Bank of America Account #334056385644, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

EIGHTIETH CLAIM FOR RELIEF

391.   The plaintiff repeats and incorporates by reference the paragraphs above.

392.   By the foregoing and other acts, defendant $33,446.88 Held in Bank of America Account #334056385644, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

EIGHTY-FIRST CLAIM FOR RELIEF

393.   The plaintiff repeats and incorporates by reference the paragraphs above.

394.   By the foregoing and other acts, defendant $695,774.00 Held in Regions

Bank Account #250240609, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTY-SECOND CLAIM FOR RELIEF

395.   The plaintiff repeats and incorporates by reference the paragraphs above.

396.   By the foregoing and other acts, defendant $695,774.00 Held in Regions Bank Account #250240609, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTY-THIRD CLAIM FOR RELIEF

397.   The plaintiff repeats and incorporates by reference the paragraphs above.

398.   By the foregoing and other acts, defendant 4236 Pepperdine Drive, Decatur, Georgia, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTY-FOURTH CLAIM FOR RELIEF

399.   The plaintiff repeats and incorporates by reference the paragraphs above.

400.   By the foregoing and other acts, defendant 4236 Pepperdine Drive, Decatur, Georgia, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTY-FIFTH CLAIM FOR RELIEF

401.   The plaintiff repeats and incorporates by reference the paragraphs above.

402.   By the foregoing and other acts, defendant 2007 Transcraft Corp Flatbed Trailer 53X102, VIN 1TTE4820871082302, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTY-SIXTH CLAIM FOR RELIEF

403.   The plaintiff repeats and incorporates by reference the paragraphs above.

404.   By the foregoing and other acts, defendant 2007 Transcraft Corp Flatbed Trailer 53X102, VIN 1TTE4820871082302, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTY-SEVENTH CLAIM FOR RELIEF

405.   The plaintiff repeats and incorporates by reference the paragraphs above.

406.   By the foregoing and other acts, defendant $259.51 Held in Public Service Credit Union Bank Account #9100701809, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## EIGHTY-EIGHTH CLAIM FOR RELIEF

407.   The plaintiff repeats and incorporates by reference the paragraphs above.

408.   By the foregoing and other acts, defendant $259.51 Held in Public Service Credit Union Bank Account #9100701809, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHTY-NINTH CLAIM FOR RELIEF

409.   The plaintiff repeats and incorporates by reference the paragraphs above.

410.   By the foregoing and other acts, defendant $2,293.61 Held in Public Service Credit Union Bank Account #9000701809, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## NINETIETH CLAIM FOR RELIEF

411.   The plaintiff repeats and incorporates by reference the paragraphs above.

412.   By the foregoing and other acts, defendant $2,293.61 Held in Public Service Credit Union Bank Account #9000701809, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINETY-FIRST CLAIM FOR RELIEF

413.   The plaintiff repeats and incorporates by reference the paragraphs above.

414.   By the foregoing and other acts, defendant $123,563.08 Held in Guaranty Bank Account #4000825684, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## NINETY-SECOND CLAIM FOR RELIEF

415.   The plaintiff repeats and incorporates by reference the paragraphs above.

416.   By the foregoing and other acts, defendant $123,563.08 Held in Guaranty Bank Account #4000825684, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINETY-THIRD CLAIM FOR RELIEF

417.   The plaintiff repeats and incorporates by reference the paragraphs above.

418.   By the foregoing and other acts, defendant $189,862.19 Held in Guaranty Bank Account #4000824577, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## NINETY-FOURTH CLAIM FOR RELIEF

419.   The plaintiff repeats and incorporates by reference the paragraphs above.

420.   By the foregoing and other acts, defendant $189,862.19 Held in Guaranty Bank Account #4000824577, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINETY-FIFTH CLAIM FOR RELIEF

421.   The plaintiff repeats and incorporates by reference the paragraphs above.

422.   By the foregoing and other acts, defendant $99,931.11 Held in Guaranty Bank Account #4000825668, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## NINETY-SIXTH CLAIM FOR RELIEF

423.   The plaintiff repeats and incorporates by reference the paragraphs above.

424.   By the foregoing and other acts, defendant $99,931.11 Held in Guaranty Bank Account #4000825668, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United

States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINETY-SEVENTH CLAIM FOR RELIEF

425.    The plaintiff repeats and incorporates by reference the paragraphs above.

426.    By the foregoing and other acts, defendant $6,392.44 Held in Betterment Bank Account #268011234296345, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## NINETY-EIGHTY CLAIM FOR RELIEF

427.    The plaintiff repeats and incorporates by reference the paragraphs above.

428.    By the foregoing and other acts, defendant $6,392.44 Held in Betterment Bank Account #268011234296345, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## NINETY-NINTH CLAIM FOR RELIEF

429.    The plaintiff repeats and incorporates by reference the paragraphs above.

430.    By the foregoing and other acts, defendant $4,627.11 Held in USAA Bank Account #202360792, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## ONE-HUNDREDTH CLAIM FOR RELIEF

431.    The plaintiff repeats and incorporates by reference the paragraphs above.

432.    By the foregoing and other acts, defendant $4,627.11 Held in USAA Bank Account #202360792, constitutes property involved in money laundering in violation of 18

U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>ONE HUNDRED AND FIRST CLAIM FOR RELIEF</u>

433.   The plaintiff repeats and incorporates by reference the paragraphs above.

434.   By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #936007280, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

<u>ONE HUNDRED AND SEOND CLAIM FOR RELIEF</u>

435.   The plaintiff repeats and incorporates by reference the paragraphs above.

436.   By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #936007280, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

<u>ONE HUNDRED AND THIRD CLAIM FOR RELIEF</u>

437.   The plaintiff repeats and incorporates by reference the paragraphs above.

438.   By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #3636820079, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

<u>ONE HUNDRED AND FOURTH CLAIM FOR RELIEF</u>

439.   The plaintiff repeats and incorporates by reference the paragraphs above.

440.   By the foregoing and other acts, defendant all funds held in JP Morgan

Chase Bank Account #3636820079, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## ONE HUNDRED AND FIFTH CLAIM FOR RELIEF

441.    The plaintiff repeats and incorporates by reference the paragraphs above.

442.    By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #591953596, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## ONE HUNDRED AND SIXTH CLAIM FOR RELIEF

443.    The plaintiff repeats and incorporates by reference the paragraphs above.

444.    By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #591953596, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## ONE HUNDRED AND SEVENTH CLAIM FOR RELIEF

445.    The plaintiff repeats and incorporates by reference the paragraphs above.

446.    By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #634799504, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## ONE HUNDRED AND EIGHTH CLAIM FOR RELIEF

447.    The plaintiff repeats and incorporates by reference the paragraphs above.

448.   By the foregoing and other acts, defendant all funds held in JP Morgan Chase Bank Account #634799504, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

ONE HUNDRED AND NINTH CLAIM FOR RELIEF

449.   The plaintiff repeats and incorporates by reference the paragraphs above.

450.   By the foregoing and other acts, defendant 5877 S. Duquesne Court, Aurora, Colorado, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

ONE HUNDRED AND TENTH CLAIM FOR RELIEF

451.   The plaintiff repeats and incorporates by reference the paragraphs above.

452.   By the foregoing and other acts, defendant 5877 S. Duquesne Court, Aurora, Colorado, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

ONE HUNDRED AND ELEVENTH CLAIM FOR RELIEF

453.   The plaintiff repeats and incorporates by reference the paragraphs above.

454.   By the foregoing and other acts, defendant Betterment Wealth Builder Account #268011226640922, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## ONE HUNDRED AND TWELFTH CLAIM FOR RELIEF

455.   The plaintiff repeats and incorporates by reference the paragraphs above. By the foregoing and other acts, defendant all funds held in Betterment Wealth Builder Account #268011226640922, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## ONE HUNDRED AND THIRTEENTH CLAIM FOR RELIEF

456.   The plaintiff repeats and incorporates by reference the paragraphs above.

457.   By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC Bank of America Account #334056613532, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

## ONE HUNDRED AND FOURTEENTH CLAIM FOR RELIEF

458.   The plaintiff repeats and incorporates by reference the paragraphs above.

459.   By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC Bank of America Account #334056613532, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## ONE HUNDRED AND FIFTEENTH CLAIM FOR RELIEF

460.   The plaintiff repeats and incorporates by reference the paragraphs above.

461.   By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC Bank of America Account #334047935713, constitutes proceeds

derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

ONE HUNDRED AND SIXTEENTH CLAIM FOR RELIEF

462.    The plaintiff repeats and incorporates by reference the paragraphs above.

463.    By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC BOA Account #334047935713, constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

ONE HUNDRED AND SEVENTEENTH CLAIM FOR RELIEF

464.    The plaintiff repeats and incorporates by reference the paragraphs above.

465.    By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC Bank of America Account #334047935705, constitutes proceeds derived from or traceable to violations of 18 U.S.C. §§ 201, 208, 666, 1343, and 1347, 42 U.S.C. § 1320a-7(b), and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(C).

ONE HUNDRED AND EIGHTEENTH CLAIM FOR RELIEF

466.    The plaintiff repeats and incorporates by reference the paragraphs above.

467.    By the foregoing and other acts, defendant all funds held in Regional Home Healthcare East, LLC Bank of America Account #334047935705 constitutes property involved in money laundering in violation of 18 U.S.C. §§ 1956(a) and/or 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant properties in favor of the United States, that the United States be authorized to dispose of the properties in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant properties and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

DATED this 14th day of December, 2018.

Respectfully submitted,

JASON R. DUNN
United States Attorney


By: s/Tonya S. Andrews
Tonya S. Andrews
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: tonya.andrews@usdoj.gov
*Attorney for the United States*