IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03208-WJM-KLM
    Consolidated with Civil Action No. 19-cv-02500-WJM-KLM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$68,145.34 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599362910,
$1,285,623.35 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599517901,
$10,000.31 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599965977,
$10,008.30 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #599965928,
$210,064.42 HELD IN JP MORGAN CHASE BANK ACCOUNT #635479809,
$45,144.07 HELD IN JACKSON NATIONAL LIFE INSURANCE ACCOUNT #1020952900,
$45,279.02 HELD IN JACKSON NATIONAL LIFE INSURANCE ACCOUNT #1020964665,
$42,351.34 HELD IN AMERICAN FUNDS BANK ACCOUNT #4000751438,
$55,889.35 HELD IN LEGG MASON BANK ACCOUNT #5000135287,
$55,715.15 HELD IN LEGG MASON BANK ACCOUNT #5000135286,
$45,387.81 HELD IN ALLIANZ BANK ACCOUNT #AV001069790,
$45,602.18 HELD IN ALLIANZ BANK ACCOUNT #AV001072172,
$2,110.72 HELD IN ACADEMY BANK ACCOUNT #9200701088,
$2,467.83 HELD IN ACADEMY BANK ACCOUNT #9300587245,
2011 TOYOTA SIENNA XLE, VIN 5TDYK3DC2BS037859,
$263,262.00 SEIZED FROM JP MORGAN CHASE BANK ACCOUNT #936007280 ON JUNE 25, 2018,
$88,737.41 HELD IN JACKSON NATIONAL LIFE IRA ACCOUNT #1020955836,
ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #936007280,
ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #3636820079,
ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #591953596,
ALL FUNDS HELD IN JP MORGAN CHASE ACCOUNT #634799504,
REAL PROPERTY LOCATED AT 5877 S. DUQUESNE COURT, AURORA, COLORADO,
ALL FUNDS HELD IN BETTERMENT WEALTH BUILDER ACCOUNT #268011226640922,
$25,714.83 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #598869741,
$347.59 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #587239989,
$1,513,635.01 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #59985444,
$25,934.80 HELD IN BELLCO CREDIT UNION BANK ACCOUNT #588743187,
2018 HONDA CR-V, VIN 7FARW2H91JE026845,
$573,887.35 HELD IN JP MORGAN CHASE BANK ACCOUNT #281852795,
$331,298.08 HELD IN JP MORGAN CHASE BANK ACCOUNT #3663323286,
2015 CADILLAC XTS, VIN 2G61L5S37F9244682,
2003 CHEVROLET CORVETTE, VIN 1G1YY32G435115773,

$206,575,57 HELD IN BANK OF AMERICA ACCOUNT #334055019012,
$1,491,204.76 HELD IN BANK OF AMERICA ACCOUNT #224056082506,
$69,539.19 HELD IN BANK OF AMERICA ACCOUNT #334055767354,
ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334056613532,
ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334047935713,
ALL FUNDS HELD IN BANK OF AMERICA ACCOUNT #334047935705,
$49,606.76 HELD IN BETTERMENT BANK ACCOUNT #268011234824534,
REAL PROPERTY LOCATED AT 445 KENDRICK TERRACE SW, ATLANTA, GEORGIA,
$919.18 HELD IN BANK OF AMERICA ACCOUNT #898086427686,
REAL PROPERTY LOCATED AT 7207 DEMETER DRIVE, ATLANTA, GEORGIA,
2016 NISSAN ROGUE, VIN 5N1AT2MV9GC738802,
2017 BMW 330I, VIN WBA8B9G36HNU56551,
2014 FORD F150, VIN 1FTFW1CF7EKD13069,
$7,770.76 HELD IN REGIONS BANK ACCOUNT #0246222464,
$116,259.31 HELD IN BANK OF AMERICA ACCOUNT #334056385560,
$99,853.91 HELD IN BANK OF AMERICA ACCOUNT #334056385727,
$33,446.88 HELD IN BANK OF AMERICA ACCOUNT #334056385644,
$695,774.00 HELD IN REGIONS BANK ACCOUNT #250240609,
REAL PROPERTY LOCATED AT 4236 PEPPERDINE DRIVE, DECATUR, GEORGIA,
2007 TRANSCRAFT CORP FLATBED TRAILER 53X102, VIN 1TTE4820871082302,
$259.51 HELD IN PUBLIC SERVICE CREDIT UNION BANK ACCOUNT #9100701809,
$2,293.61 HELD IN PUBLIC SERVICE CREDIT UNION BANK ACCOUNT #9000701809,
$123,563.08 HELD IN GUARANTY BANK ACCOUNT #4000825684,
$189,862.19 HELD IN GUARANTY BANK ACCOUNT #4000824577,
$99,931.11 HELD IN GUARANTY BANK ACCOUNT #4000825668,
$6,392.44 HELD IN BETTERMENT BANK ACCOUNT #268011234296345,
$4,627.11 HELD IN USAA BANK ACCOUNT #202360792, and
ALL FUNDS HELD IN WELLS FARGO BANK ACCOUNT #1442712798,

Defendants.

_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the Government/Plaintiff's **Opposed Motion to Stay Case** [#83]¹ (the "Motion"). Claimants Andrew Ssekajja ("Ssekajja") and Genesis

---

¹ "[#83]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

Home Health Agency ("Genesis") filed a Response [#85] in opposition to the Motion [#83]. The Government filed a Reply [#86]. Claimants Ssekajja and Genesis have filed Claims [#22, #23] with respect to several of the Defendant items seized in this civil forfeiture action. For the reasons set forth below, the Motion [#83] is **GRANTED**.

The Government seeks a stay of this matter until completion of parallel criminal proceedings against two other Claimants, Joseph Prince ("Prince") and Roland Vaughn ("Vaughn"). *Motion* [#46] at 3. The Government's request comes in response to discovery requests from several of the Claimants in this matter. On October 15, 2019, Claimant Regional Home Health Care Systems, LLC East ("Regional East") sent discovery requests to the Government. Amongst other requests, Claimant Regional East specifically requested all criminal discovery. Then, on October 25, 2019, Claimants Genesis and Ssekajja sent discovery requests to the United States requesting production of certain documents.

Pursuant to 18 U.S.C. § 981(g)(1), "[u]pon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." Thus, in order to obtain a stay, "the government must show (1) that a related criminal investigation or prosecution exists and (2) that civil discovery would adversely affect such investigation or prosecution." *United States v. Approximately up to $15,253,826 in Funds Contained in Thirteen Bank Accounts*, No. 2:11CV806 DAK, 2013 WL 2471912, at *1 (D. Utah June 7, 2013).

A.     **Related Investigation or Prosecution**

The Court first addresses whether a related criminal investigation or prosecution exists. Pursuant to 18 U.S.C. § 981(g)(4):

> [T]he terms "related criminal case" and "related criminal investigation" mean an actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made. In determining whether a criminal case or investigation is "related" to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two proceedings, without requiring an identity with respect to any one or more factors.

Here, Claimant Prince is set to go to trial on March 2, 2020, in a criminal proceeding in the District of Colorado in case No. 18-cr-00300-RM. *See* [#88] at 3. Claimant Vaughn has a Sentencing Hearing set for April 9, 2020, in the same case.

With respect to this element, Claimants Ssekajja and Genesis "do not necessarily dispute the possibility of the similarity between the witnesses in the criminal case and the forfeiture proceeding," but they state that their written discovery requests do not seek to depose such witnesses or request the identities of such witnesses. *Response* [#85] at 8. Be that as it may, that is simply not the standard here. Although Claimants' contention may impact the second element of the test, whether the specific discovery at issue impacts the criminal proceeding(s) is not a part of the statutory consideration on the first element, which merely requires the Court to "consider the degree of similarity between the parties, witnesses, facts, and circumstances" between the cases. 18 U.S.C. § 981(g)(4).

Regarding the facts and circumstances, Claimants Ssekajja and Genesis argue:

> [T]he crux of the government's criminal indictment against Claimant Joseph Prince alleges misconduct against him in his capacity as an employee with the VA, i.e. allegations of Prince's scheme to defraud the VA by (1) referring beneficiaries to a home health agency owned by his family members and other associates, (2) by soliciting and receiving bribes or rewards and kickback from home health agencies owned or controlled by [Claimant

> Joseph Prince's] associates and to which he referred beneficiaries; and (3) by causing and facilitating overbilling by the home health agencies. Contrarily, the government's only contention against Claimants is that Claimants made two payments to Claimant Flavia Nalunga. Importantly here, no payments are alleged to have been "kickbacked" from Claimants to Claimant Joseph Prince or any other individuals who were criminally indicted. Moreover, . . . neither Genesis nor Ssekajja are employed with the VA, and the government does not – and cannot – allege that Claimants are members of the same association or organization as Claimant Joseph Prince.

*Response* [#85] at 8-9 (internal citations omitted).

The statute prevents the Court from "requiring an identity with respect to any one or more factors." 18 U.S.C. § 981(g)(4). In other words, the facts and circumstances underlying this civil forfeiture case and the criminal proceedings need not be identical. "[W]hether a forfeiture proceeding is related to a criminal indictment demands a commonsense, fact-bound analysis." *In re Ramu Corp.*, 903 F.2d 312, 319 (5th Cir. 1990). In situations where the criminal proceeding(s) and the forfeiture action "have common facts, similar alleged violations and some common parties, the actions are clearly related." *United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXX8359 in the Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006).

The Court has carefully read the Government's Complaint [#1] and easily concludes that the Government has described Claimants Genesis and Ssekajja's specific ties to Claimants Prince and Vaughn in sufficient detail for the Court to conclude that this matter—including Claimants' roles in it—is related to the criminal proceedings, against Claimant Prince in particular. As outlined by the Government in the present Motion [#83],

> The underlying allegations in the civil forfeiture case relate to a scheme to defraud the VA. Specifically, Claimant Joseph Prince used his position at the VA to solicit beneficiaries to sign on to receive home health benefits as part of the Spina Bifida Health Care Benefits Program and then structured the home health and homemaking services program to financially benefit himself

and others. Claimant Joseph Prince told caregivers that they could receive payments for their caregiving regardless of whether they were an "approved health care provider" as required by regulation. As part of the scheme, Prince would refer the caretakers directly to home care agencies that were controlled by family members or other associates, including the Claimants that are seeking discovery. . . . [T]he close association can be inferred by the familial and business ties between the Claimants opposing a stay and Claimants/Defendants Prince and [Roland] Vaughn. In particular, Claimant Regional East is owned and operated by Joseph Prince's sister, Marcelline McCrea Stripling. In addition, Claimant Andrew Ssekajja, who owns and operates Claimant Genesis, is Joseph Prince's brother-in-law who also resided with Joseph and Flavia Prince during much of the alleged criminal activity. Further, the Claimants in the present case are under investigation for allegedly participating in or having knowledge of the same activities and conspiracies at issue in the related criminal case against Claimants Prince and Vaughn.

*Motion* [#83] at 10-11. Accordingly, the Court finds that the criminal proceedings against Claimants Prince and Vaughn are "related" to this forfeiture case within the mean of the statute.

## B.  Effect of Civil Discovery on Investigation or Prosecution

Neither the Tenth Circuit Court of Appeals nor the United States District Court for the District of Colorado has directly addressed the Government's burden under 18 U.S.C. § 981(g)(1) regarding the specificity with which it must show that the civil discovery will adversely affect its ability to conduct a related investigation or prosecution. Only a few district courts elsewhere within the Tenth Circuit have done so.

For example, in *United States v. All Funds Deposited in Account No. 20008524845, First Union National Bank*, 162 F. Supp. 2d 1325, 1328-29 (D. Wyo. Sept. 5, 2001), the court noted that 18 U.S.C. § 981(g)(1), which had recently been amended on August 23, 2000, had previously contained a "good cause" requirement:

> The filing of an indictment or information alleging a violation of law, Federal, State or local, which is also related to a forfeiture proceeding under this

section shall, upon motion of the United States and for good cause shown, stay the forfeiture proceeding.

Good cause under the prior version of the statute had been defined by courts "to encompass a requirement that the Government make some specific showing of potential harm if the requested discovery is disclosed without being compelled to compromise the prosecution of the ongoing related criminal proceeding." 162 F. Supp. at 1331 (internal quotation marks omitted). Because Congress struck the words "for good cause shown," the court there held that the statute no longer requires "some specific showing of potential harm." *See id.* at 1330-31 (noting that the amended stay provision "broadened the stay relief significantly").

More recently, in *United States v. Real Property Located at 6600 and 6560 Ventura Road SE, Deming, NM*, No. CIV 11-1109 RB/LFG, 2012 WL 13080110, at *2 (D.N.M. June 15, 2012), the court approvingly cited to a number of cases from the Northern District of California and the Central District of California holding that a specific showing of potential harm is not required. "Section 981(g)(1) does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." 2012 WL 13080110, at *2 (quoting *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183 (C.D. Cal. 2011)). "In fact, more specific disclosure of prejudice through detailed evidentiary support will only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." 2012 WL 13080110, at *2 (quoting 866 F. Supp. 2d at 1183-84). "Thus, Courts have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding caused by the civil discovery." 2012 WL

13080110, at *2 (quoting 866 F. Supp. 2d at 1184).

In *United States v. $9,171.00 United States Currency*, No. 1:16-cv-00483-TWP-MJD, 2016 WL 6138122, at *3-4 (S.D. Ind. Oct. 21, 2016), the court discussed how this legal standard has been interpreted differently by different courts across the country:

> [T]he Court notes that the standard for the showing required to establish an adverse effect under § 981(g)(1) is not as settled as the United States suggests. The United States cites to several cases establishing what appears to be a very friendly standard to the United States in such cases. The Central District of California, for example, determined that "Section 981(g)(1) does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." While the *One 2008 Audi* court went on to detail the specific dangers of unwarranted civil disclosures in that case, the *$1,026,781.61* court found that a conclusory declaration as to discovery overlap between the related civil and criminal matters was sufficient.
>
> Other courts, however, have required something more. A court in the Northern District of Texas, for example, interpreted the statutory language to require "an actual showing regarding the anticipated adverse affect" on the related proceeding beyond "speculative and conclusory theories" of potential abuse of the discovery process. The *$3,592* court denied a motion for stay without prejudice even where the claimant was indicted for maintaining a drug operation at the same location from which the defendant currency was seized. The court was unwilling to merely assume that the connectedness between the civil and criminal matters would adversely affect the government's ability to prosecute the criminal case.

(internal citations omitted). The court noted (without making any holding) that "[s]ection 981(g)(1) undoubtedly requires some showing of adverse effect above the relatedness inquiry . . . , though the two will frequently be related." *$9,171.00 United States Currency*, 2016 WL 6138122, at *4. "To conclude otherwise would collapse the first two prongs of the test and write the 'adversely affect[ing]' language out of the statute." *Id.*

Ultimately, the Court agrees that something more than generalized speculation is required to meet the statutory standard, as held in *United States v. $3,592.00 United States*

-8-

*Currency*, No. 15-CV-6511-FPG, 2016 WL 5402703, at *2 (W.D.N.Y. Sept. 28, 2016). To obtain a stay of the civil case, the government must demonstrate that "civil discovery *will* adversely affect the ability of the government to conduct . . . the prosecution of a related criminal case." 18 U.S.C. § 981(g)(4) (emphasis added). "Importantly, the government's burden is not simply to show that civil discovery *could* adversely affect the criminal case, but to show that civil discovery *will* adversely affect the criminal case." *$3,592.00 United States Currency*, 2016 WL 5402703, at *1 (emphases added).

Here, with one important exception discussed below, the Government's argument relies almost exclusively on what "could," "would potentially," or "would likely" happen if the Court were to deny a stay. *See, e.g.*, Motion [#83] at 7-8 ("[B]ecause civil discovery is broader than that allowed under Fed. R. Crim. P. 16, engaging in civil discovery while prosecuting or investigating a related criminal case would potentially create criminal disclosure obligations . . . . This could unduly jeopardize both the criminal process and trial. Indeed, the process of engaging in civil discovery, would likely create discovery obligations in the criminal case, thereby, potentially continuing the criminal case and delaying and hampering the rights of the criminal defendants to a just and speedy trial."). "The problem with the government's argument is that it eviscerates the statute's requirement of *demonstrating* that civil discovery *will* adversely affect a related criminal case." *$3,592.00 United States Currency*, 2016 WL 5402703, at *2 (emphases in original). Rather, "[a]ll the government has offered in its application are possibilities and speculation." *Id.* "If Congress wanted all related civil forfeiture actions to be stayed based on the *possibility* that civil discovery could affect the related criminal matters, the statute could have easily provided for that." *Id.* "But Congress chose a different standard, and to warrant a stay, the

government must satisfy the standard that the statute requires." *Id.*

The Court emphasizes that the Government's burden here is *not* a high one. Although a mere, unadorned statement that civil discovery will interfere with the criminal investigation is insufficient, the Court finds that the Government's support for such a statement need not be exhaustive. The statute only requires a showing that "civil discovery will adversely affect the ability of the government to conduct . . . the prosecution of a related criminal case." 18 U.S.C. § 981(g)(4). There is no requirement that the Government provide an in-depth, detailed analysis of all the ways that civil discovery will adversely affect the prosecution. There is also no requirement that the prosecution be *greatly* adversely affected in some major way. The Government is simply expected to make a minimal showing that the prosecution "will" be adversely affected in some way that is specific to this case. Here, with the one major exception discussed below, the Government has simply made statements that would be applicable to nearly any civil forfeiture case with related criminal proceedings.[2] *See, e.g.*, Motion [#83] at 8 ("The claimants seeking discovery have not been charged in any related criminal case; however, an investigation into criminal conduct is ongoing. Therefore, civil discovery could allow those claimants to obtain information that would reveal the criminal trial strategy or materials outside of what would be disclosed in a related criminal case.").

Importantly, there is the one major exception in the briefs to which the Court alluded above. The Court is highly concerned about a statement made by the Government but

---

[2] As an aside, the Court notes that the Government did not take advantage of 18 U.S.C. § 981(g)(5), which provides that "the Government may, in appropriate cases, submit evidence ex parte in order to avoid disclosing any matter that may adversely affect an ongoing criminal investigation or pending criminal trial."

which, inexplicably, was not emphasized in the briefs, regarding the fact that Claimant Regional East has, among other requests, already requested all criminal discovery. *Motion* [#83] at 5. This statement alone transforms the "potential" adverse effect on the criminal proceedings into an actual effect, if discovery were permitted to proceed. This means that civil discovery will allow Claimants to obtain information relating to the criminal trial strategy and materials outside of what would be disclosed in a related criminal case. *Motion* [#83] at 8. This also means that allowing civil discovery to proceed at this point will burden law enforcement by compromising prospective witnesses and other evidence now being gathered by the Government in preparation for the criminal proceedings in connection with the underlying facts of this case. *Id.* at 9. In short, this request shows that Claimants, or at least one Claimant, is actively seeking information from the criminal proceedings. The Court finds that this alone is sufficient to meet the Government's low burden that civil discovery *will* adversely impact the criminal proceedings.[3]

Accordingly,

IT IS HEREBY **ORDERED** that the Motion [#83] is **GRANTED**. All discovery in this case is **STAYED** pending the conclusion of the criminal proceedings against Defendants Prince and Vaughn.

IT IS FURTHER **ORDERED** that the parties shall file a Joint Status Report every

---

[3] Claimants Genesis and Ssekajja also argue that they would be prejudiced by the imposition of a stay. That, however, is not a consideration contemplated by the statute. Even if it were, these Claimants have made no specific showing as to prejudice beyond "remain[ing] in limbo, darkened by the cloud of suspicion that the government cast on them at the beginning of its criminal case." *Response* [#85] at 9. Criminal proceedings against Defendant Vaughn are expected to be completed in April 2020 with his sentencing. Defendant Prince's criminal trial is scheduled for March 2020, which may or may not result in the completion of criminal proceedings against him at that time.

sixty (60) days from the date of this order and within ten (10) days of when criminal proceedings against **both** Defendant Prince and Vaughn have been completed.  The Joint Status Reports shall inform the Court of the current status of the criminal proceedings and anything else of which the parties believe the Could should be made aware.  **This order for Joint Status Reports supercedes the Court's prior orders for Claimants Joseph Prince and Glenn Beach to file individual Status Reports.**  Claimants Joseph Prince and Glenn Beach no longer need to file their individual Status Reports but shall join in the Joint Status Report instead.

DATED: January 17, 2020

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge